Filed 8/28/13  Kashian v. Simonian CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EDWARD KASHIAN et al., | F064325 |
| Plaintiffs and Respondents, | (Super. Ct. No. 06CECG03890) |
| v. | |
| DAVID SIMONIAN et al., | **OPINION** |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Fresno County.  Donald S. Black, Judge.

Georgeson and Belardinelli, C. Russell Georgeson, Richard A. Belardinelli and Christopher B. Noyes for Defendants and Appellants.

Lang, Richert & Patch and Scott J. Ivy for Plaintiffs and Respondents.

-ooOoo-

In this business litigation case, some of the founding members of two limited liability companies (LLCs) became embroiled in a dispute with the other founding members over the nature and validity of certain financial transactions and other matters affecting the LLCs and the members' rights and obligations therein.  One faction, consisting of Edward Kashian individually and Harry Mazgedian as trustee of the Harry Mazgedian 1991 Living Trust (plaintiffs), filed a lawsuit against the other faction, consisting of David Simonian, Harold Simonian and Patricia Simonian as trustee of the David E. Simonian and Patricia M. Simonian Living Trust (defendants).  The lawsuit included causes of action for breach of fiduciary duty, declaratory relief *and dissolution* of the LLCs.  In response to the lawsuit, defendants not only filed an answer but also served a notice of exercise of their rights under Corporations Code[1] section 17351, subdivision (b) (§ 17351(b)), to purchase plaintiffs' interest in the two LLCs in order to avoid dissolution.[2]  However, the parties agreed they would not undertake the appraisal process of section 17351(b) until a number of disputed issues were first resolved, and they stipulated to having a private judge, the Honorable Nickolas J. Dibiaso, retired (the Referee), hear and decide all disputed issues.[3]  The issues submitted by this stipulation were essentially the same as those set forth in plaintiffs' lawsuit, albeit narrower in scope. Following extensive litigation, the Referee resolved nearly all of the disputed issues in plaintiffs' favor.  Thereafter, plaintiffs moved for an award of attorney fees under the

---

[1]Unless otherwise indicated, all further statutory references are to the Corporations Code.

[2] Section 17351(b) provides for a special appraisal process to ascertain the fair market value of an LLC member's interest that is sought to be purchased to avoid dissolution, and it allows for recovery of attorney fees under limited circumstances not applicable here.

[3] Retired Justice Dibiaso was appointed to so act by order of the superior court, pursuant to the parties' stipulation and Code of Civil Procedure section 638.

attorney fees provisions set forth in the operating agreements for the two LLCs. The Referee found plaintiffs to be the prevailing parties and granted the motion.

Defendants appeal from the order granting attorney fees, arguing that the attorney fees award was improper because they invoked their purchase rights under section 17351(b). According to defendants, once they invoked their rights under section 17351(b), the special proceedings articulated in that statute *supplanted* or *trumped* any other basis for attorney fees. Since the limited conditions for recovery of attorney fees under section 17351(b) were not present in this case, defendants argue that none should have been awarded. We find it is unnecessary to decide whether section 17351(b) might, in some cases, operate in the manner suggested by defendants. Here, we merely conclude that since the parties expressly agreed to litigate certain disputed issues *prior to* submitting the matter to the appraisers under section 17351(b), the attorney fees incurred during that distinct litigation were recoverable under the contractual provisions. As the Referee reasonably determined, plaintiffs prevailed in that litigation by obtaining, in substance, declaratory relief in their favor on the majority of the disputed issues. For these reasons, we affirm the trial court's order awarding attorney fees to plaintiffs.

## FACTS AND PROCEDURAL HISTORY

<u>The Pleadings and Defendants' Notice under Section 17351(b)</u>

Plaintiffs' original complaint was filed November 17, 2006, relating to two LLCs owned jointly by plaintiffs and defendants. The two LLCs engaged in farming enterprises, one known as Arvin 155, LLC (Arvin LLC) and the other known as Elkhorn 167, LLC (Elkhorn LLC). The parties signed an operating agreement for each of the two LLCs, which agreements set forth the parties' capital contributions, management responsibilities and other matters. The operating agreements referred to plaintiffs as the

3.

"Fresno Members" and to defendants as the "Simonian Members."[4] Paragraph 13.17 of both of the operating agreements contained the following attorney fees provision: "In the event that any dispute between the Company and the Members or among the Members should result in litigation, the prevailing party in such dispute shall be entitled to recover from the other party all reasonable costs and expenses of the prevailing party, including, without limitation, reasonable attorney's fees and expenses."

Pursuant to the operating agreement for Elkhorn LLC, plaintiffs contributed a 167-acre parcel of Fresno County real property encumbered by an existing debt, which debt the parties agreed would be assumed by Elkhorn LLC. Since defendants had expertise in agricultural matters, defendants would manage the day-to-day farming operations and would also be responsible to "contribute cash" to the LLC "as needed" for production of an "initial crop" (e.g., purchasing and planting the fruit trees, installing drip irrigation, etc.) as well as for payment of interest and principal on any and all debt of the LLC. Additionally, defendants were responsible to "loan cash" to the LLC "as needed … to produce crops (other than the initial crop)" and for "the payment of the interest and principal on any and all debt" of the LLC. The operating agreement further provided, under the heading "Harvesting and Packing," as follows: "The Members understand that a 'Grower Agreement' shall be entered into with the Simonian Fruit Company, a California Corporation. The Simonian Fruit Company shall be paid its normal and customary charges which charges shall not exceed the lowest fee charged by the Simonian Fruit Company to unrelated parties." Defendants David Simonian and Harold Simonian were the owners and/or sole shareholders of Simonian Fruit Company.

Under the operating agreement for Arvin LLC, plaintiffs contributed a 155-acre parcel of Kern County real property. The real property was encumbered by an existing

---

**4** The Referee and the parties' appellate briefs generally use this same terminology to describe plaintiffs and defendants.

debt of $602,000 to Metropolitan Life, which debt the parties agreed would be assumed by Arvin LLC. Defendants were required to initially "contribute cash" of $112,000 to the LLC. Defendants would manage the day-to-day farming operations and were also responsible to "loan cash" to the LLC "as needed for cultural costs to produce crops" and for "the payment of the interest and principal on any and all debt" of the LLC. Aside from the differences made apparent by this summary (e.g., the particular land, debt, and defendants' initial cash contribution), the terms of the Arvin LLC operating agreement were substantially the same as those in the Elkhorn LLC operating agreement, including the provision authorizing an agreement with Simonian Fruit Company for harvesting and packing services.

Subsequently, the parties entered into a first addendum to the Arvin LLC operating agreement (the addendum). The addendum provided, among other things, that plaintiffs would contribute an additional sum of $12,838.89 directly to the LLC, and defendants would contribute an additional sum of $55,875 to the LLC "by paying said amount directly to Metropolitan Life in partial repayment of [Arvin LLC]'s debt to Metropolitan Life." In consideration of these further payments, it was agreed that plaintiffs would not be required to make any additional capital contributions to the LLC. The addendum also expressly permitted checks, drafts and other instruments to be signed by one of defendants ("a Simonian Member") without the necessity of obtaining the signature of one of plaintiffs ("a Fresno Member").

Having outlined the parties' contractual relationship as alleged in the complaint and as shown by the operational agreements attached thereto, we now turn to plaintiffs' allegations of wrongful conduct. A major dispute that arose between the parties concerned the amount of debt that was purportedly owed by the LLCs to Simonian Fruit Company. According to plaintiffs' characterization of events, defendants failed to "personally" loan money to the LLCs as required, but instead they "financed the LLCs by funneling a portion of monies loaned by banks to their related entity, Simonian Fruit

5.

Company, to the LLCs."  With "no personal funds at stake," defendants "used the woefully unprofitable LLCs as a 'loss leader,' while their related company earned millions in packing charges and interest charged on the purported loans to the LLCs." According to plaintiffs, "[b]y late 2006, the LLCs' alleged 'debt' to [Simonian Fruit Company] was almost $4,000,000 which, if a valid debt, would have rendered [plaintiffs'] interests in the LLCs worthless."[5]  Another significant dispute arose when defendants insisted that plaintiffs pay the Metropolitan Life debt, even though the parties had agreed that debt would be assumed by Arvin LLC.

Plaintiffs' complaint included a cause of action for breach of fiduciary duties. That cause of action alleged that defendants breached their fiduciary duties by the following conduct:  (1) misappropriating assets of Arvin LLC and Elkhorn LLC; (2) creating liabilities for Arvin LLC and Elkhorn LLC, which inured exclusively to defendants' benefit as the owners of Simonian Fruit Company; (3) allowing companies owned solely by defendants to create artificial and/or unauthorized fees and charge said improper fees to Arvin LLC and Elkhorn LLC; (4) misrepresenting and concealing the financial affairs of Arvin LLC and Elkhorn LLC; (5) failing to provide timely or accurate financial information; (6) allowing Simonian Fruit Company to violate its obligations as a fruit broker under California statutory law; (7) demanding that plaintiffs pay the Metropolitan Life debt expressly assumed by Arvin LLC; (8) failing to loan cash to Arvin LLC to pay interest and principal on the Metropolitan Life debt, as required in the Arvin LLC operational agreement; (9) demanding plaintiffs sign a deed of trust in the name of Arvin LLC to secure an alleged debt of over $3.6 million in favor of Simonian Fruit Company; (10) making their demand for said deed of trust in contravention of the terms of the Arvin LLC operational agreement; (11) failing to provide an accounting of how

---

**5**     The purported debt was described in the pleadings as approximately $3.6 million, but at trial as approximately $4 million.

Arvin LLC incurred a debt of more than $3.6 million to Simonian Fruit Company; and (12) using unjustified demands as a means to harass plaintiffs, extract additional money from plaintiffs in contravention of the addendum, and force them out of the business.

The other causes of action in plaintiffs' complaint, including constructive fraud, declaratory relief, dissolution, accounting, appointment of receiver and injunctive relief, were all premised on the same allegations or on matters related thereto. In the fourth cause of action for declaratory relief, plaintiffs incorporated by reference the same set of facts and sought a judicial declaration to resolve the parties' disputed issues. The fifth cause of action, for dissolution of Arvin LLC and Elkhorn LLC, added further allegations that grounds for dissolution of the LLCs existed, including internal dissension between the members of the LLCs, causing "deadlock" in the management, and the fact that defendants, as the day-to-day managers of the LLCs, "knowingly countenanced persistent and pervasive fraud, mismanagement, and unfairness towards Plaintiffs."

Defendants filed an answer in the form of a general denial and assertion of numerous affirmative defenses. A few weeks later, defendants served notice of the exercise of their rights to purchase the membership interests of plaintiffs in Arvin LLC and Elkhorn LLC, pursuant to section 17351(b) (the notice of exercise). Section 17351(b)(1) provides, in relevant part: "In any suit for judicial dissolution, the other members may avoid the dissolution of the limited liability company by purchasing for cash the membership interests owned by the members so initiating the proceeding … at their fair market value." To ascertain fair market value when the parties are unable to agree thereon, a special appraisal process is set forth in section 17351(b)(3).

We note that under section 17351(b)(2), the party exercising its right to purchase may, after providing a bond, apply to the court for an order *staying* the "winding up and dissolution proceeding" while the appraisal and purchase process is carried out. Here, however, there is nothing in the record before us to indicate that defendants ever obtained

7.

such a stay order from the Referee or trial court. Instead, defendants' notice of exercise asked plaintiffs to voluntarily stay the dissolution proceeding.

By letter, plaintiffs responded through counsel to defendants' notice of exercise, including the stay request. Plaintiffs agreed that although the actual dissolution of the LLCs would not occur until after the valuation and appraisal proceedings, "the remaining claims must not be stayed." Plaintiffs emphasized the existence of the material dispute between the parties regarding the validity of "the disputed debt" carried by each of the LLCs, and asserted that unless the valuation somehow excluded or removed that disputed debt, it did not make sense to proceed with the appraisal process until a trier of fact first determined the disputed claims.

On June 12, 2008, plaintiffs filed their first amended complaint. The first amended complaint was the same as the original complaint, but added causes of action for fraud and breach of contract based on defendants' alleged failure to comply with their promise to *personally* loan money to fund the operations of the LLCs. Defendants' answer to the first amended complaint included a statement seeking enforcement of their rights to purchase under section 17351(b), and prayed for a full declaration of the parties' rights and duties.

Stipulation to Appoint Private Judge

Finally, in July 2008, the parties reached an agreement on how to proceed by entering into their "STIPULATION TO APPOINT PRIVATE JUDGE" (the stipulation). The stipulation, approved by order of the superior court on July 7, 2008, provided among other things that "the Honorable Nickolas Dibiaso (Retired)" shall be assigned "for the purpose of presiding over the litigation and trial of this matter, pursuant to Code of Civil Procedure §638." It was agreed in the stipulation that "Judge Dibiaso shall have the power to hear and rule upon any issue which would otherwise have been presented to the Fresno County Superior Court, including the power to grant all forms of legal and equitable relief." The stipulation expressly outlined the phases in which the disputed

8.

issues would be tried, beginning with a trial regarding the "rights, duties and obligations of the parties and the legal effect" of the parties' various contracts.  Among the issues to be resolved under the stipulation were, "the legal effect, if any, of money allegedly advanced/loaned by Simonian Fruit Company to Arvin … LLC and Elkhorn LLC, [and] who, if anyone, bears the legal/contractual responsibility for paying the Metropolitan Life Insurance balloon payment."

The stipulation clearly provided that resolution of the disputed issues would precede the implementation of the appraisal and valuation process referenced in section 17351(b)(3).  Specifically, after outlining the steps of the contemplated litigation process, the stipulation stated:  "PROVIDED HOWEVER, the issue of the legal effect of Defendants['] exercise of Corporations Code §1735[1](b) Right to Purchase Membership Interest … shall not be determined until all other legal and equitable determination shall first be made, including any accountings deemed necessary by [the Referee]."

Litigation of the Disputed Issues

We briefly note some of the determinations that were made by the Referee.  In the initial phase of litigation, the Referee found in his statement of triable issues that the loans or advances by Simonian Fruit Company to the LLCs were not authorized by the operating agreements.  In so holding, the Referee acknowledged that remaining issues existed of whether, based on principles of waiver, estoppel, laches or ratification, any portion of the monies loaned or advanced to the LLCs by Simonian Fruit Company became a legitimate liability of the LLCs.  The Referee also held that plaintiffs did not have any obligation under the Arvin LLC operating agreement to pay the Metropolitan Life debt.  The Referee noted that plaintiffs did have an obligation to pay the debt under their original financing agreement with Metropolitan Life, such that, if Arvin LLC defaulted on its assumed obligations to plaintiffs to pay the debt before the due date of the final installment, defendants would be obligated to indemnify plaintiffs under the terms of the parties' indemnity agreement.  On the other hand, if Arvin LLC did not

9.

default on its assumed obligations to pay the debt before the final installation was due but defaulted on its assumed obligations to pay the final installment, defendants would not be obligated to indemnify plaintiffs.

A second phase of the trial covered certain unresolved issues. After this phase of the trial, the Referee held in his "DECISION ON UNRESOLVED ISSUES" that the unauthorized loans by Simonian Fruit Company to the LLCs were not transformed into legitimate debts of the LLCs through waiver, estoppel, laches or ratification. The Referee stated further: "In the context of this case, then, the questioned loan transactions constitute both a forbidden fiduciary transaction [by defendants] independent of the [operating agreements] and a forbidden contractual transaction under the [operating agreements]."

A third phase of the trial occurred in June 2009. On September 11, 2009, the Referee issued his "DECISION ON PHASE III ISSUES." The Referee decided, among other things, that (1) none of the unauthorized loans constituted enforceable grower "advances" as suggested by defendants; (2) the unauthorized loans should not be carried as liabilities on the books of the LLCs for the reasons expressed in the Referee's prior decisions; (3) $980,000 in funds from defendants' related company could not be classified as defendants' personal capital contributions; and (4) the amount of the Metropolitan Life debt should not be disregarded as a liability of Arvin LLC for purposes of valuation, and plaintiffs are entitled to be indemnified by defendants for certain interest payments on the Metropolitan Life debt made by plaintiffs. Based on such rulings, none of which were appealed by defendants, the Referee restated the balance sheets of the LLCs to conform to his rulings.

Finally, given that all of the disputed issues had at that point been decided, the Referee's September 11, 2009, decision instructed the parties to commence the appraisal and valuation proceedings under section 17351(b).

10.

Appraisal Proceedings under Section 17351(b)

The valuation and appraisal procedures of section 17351(b) then proceeded. The parties were unable to agree upon the fair market value of plaintiffs' membership interest in the LLCs and, accordingly, a bond was given by defendants and three appraisers were appointed as required by section 17351(b) to ascertain the fair market value of plaintiffs' membership interest in the LLCs.[6] After the appraisers submitted their reports, further hearings were held before the Referee and the valuation of plaintiffs' interest was confirmed by the Referee in a final statement of decision. The final statement of decision also included the Referee's final statement of findings on disputed issues in the case.

A form of alternative decree (entitled "ORDER CONFIRMING APPRAISERS' AWARD AND CORPORATIONS CODE §17351(b)(3) DECREE") was presented by the Referee to the superior court, along with the Referee's final statement of decision and the Referee's report to the superior court. The Referee also transmitted to the superior court an original form of judgment. The superior court signed and filed the alternative decree, and, once it was confirmed that defendants paid the purchase price required for plaintiffs' interest in the LLCs, entered the judgment.

There is no dispute that defendants timely tendered the purchase price for plaintiffs' interests in the LLCs, in the amount determined by the appraisers and confirmed by the Referee and superior court.

The Motion for Attorney Fees

After judgment was entered, the superior court referred the matter back to the Referee to hear and decide any motions for attorney fees. Plaintiffs and defendants both claimed to be the prevailing parties and both moved for recovery of contractual attorney

---

**6** The purpose of a bond is this: if the party exercising its purchase rights under section 17351(b) fails to timely pay the purchase price in accordance with the court's decree, the other party will be able to recover its attorney fees and costs associated with the appraisal and valuation proceedings under the statute. (§ 17351(b)(3).)

fees.  In his interim ruling on motions for costs and attorney fees, the Referee noted the several issues that were placed in dispute by the pleadings and the stipulation,[7] and determined that plaintiffs prevailed on nearly every issue.  Accordingly, the Referee found that plaintiffs were the prevailing parties in the litigation.  Plaintiffs were awarded attorney fees in the amount of $647,734.05 and costs of $44,503.  An amended judgment incorporating said attorney fees and costs was entered on January 6, 2011.

Defendants appeal from the order awarding attorney fees and costs.

## DISCUSSION

### I.    Standard of Review

"'On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion.  However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.'" (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175, citing *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.)  "Stated another way, to determine whether an award of attorney fees is warranted under a contractual attorney fees provision, the reviewing court will examine the applicable statutes and provisions of the contract.  Where extrinsic evidence has not been offered to interpret the [contract provision], and the facts are not in dispute, such review is conducted de novo.  [Citation.]  Thus, it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question

---

[7]     The Referee noted that "Though the [first amended complaint] is pled expansively and in detail, the Stipulation for the Reference and the course of the proceedings narrowed the issues in the case to a few defined claims presented and contested in a variety of ways during the Reference …."  The Referee then listed those issues and spelled out how plaintiffs prevailed on virtually all of them.

of law to be reviewed de novo.  [Citation.]"  (*Carver v. Chevron U.S.A., Inc., supra*, at p. 142.)

## II.     The Scope of the Attorney Fee Provision

Defendants primarily contend that the attorney fees award was improper because the right to contractual fees was trumped by section 17351(b).  Before addressing that issue, we provide some foundational background to our discussion by noting the statutory underpinnings for awarding contractual attorney fees and by observing that the subject attorney fees provisions were sufficiently broad in scope that they easily encompassed the entire spectrum of issues litigated by the parties below.

Code of Civil Procedure section 1021 provides:  "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties .…"  (See also Code Civ. Proc., § 1033.5, subd. (a)(D)(10)(A) [attorney fees allowable as costs under Code Civ. Proc., § 1032 to prevailing party "when authorized by … Contract"].)  In accordance with these statutes, it is recognized that "'[P]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract.'"  (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608, quoting *Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1341 (*Xuereb*) [construing Code Civ. Proc., § 1021].)[8]  For example, in cases where the attorney fees provision allows an award of attorney fees to the prevailing party in "'any dispute'" resulting in litigation between the parties, the provision is broad enough to encompass *all* types of claims, whether classified as

---

[8]     Section 1021 of the Code of Civil Procedure, consistent with section 1033.5, subdivision (a)(D)(10)(A) of that code "recognizes that attorney fees … may be recovered as costs only when they are otherwise authorized by statue or *by the parties' agreement*."  (*Santisas v. Goodin, supra*, 17 Cal.4th at p. 607, fn. 4, italics added.)

13.

contract, tort or otherwise. (*Maynard v. BTI Group, Inc*. (2013) 216 Cal.App.4th 984, 993 (*Maynard*); *Miske v. Coxeter* (2012) 204 Cal.App.4th 1249, 1259.)

Civil Code section 1717 also addresses the recovery of attorney fees pursuant to a contractual provision. It states, in relevant part, as follows: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract … shall be entitled to reasonable attorney's fees in addition to other costs." (Civ. Code, § 1717, subd. (a).) By its terms, Civil Code section 1717 "covers *only* contract actions, … where the contract sued upon itself specifically provides for an award of attorney fees incurred to enforce *that* contract." (*Xuereb*, *supra*, 3 Cal.App.4th at p. 1342.) The primary purpose of Civil Code section 1717 is to ensure mutuality of remedy for attorney fees claims under such contractual attorney fee provisions. (*Santisas v. Goodin*, *supra*, 17 Cal.4th at p. 610.) Section 1717 is not applicable to tort or other noncontract claims. (*Santisas v. Goodin*, *supra*, at p. 615.)

Here, the Referee assumed that Civil Code section 1717 was applicable in this case, at least to the extent contract claims were asserted by plaintiffs, and the parties do not dispute the matter. Plaintiffs point out that Code of Civil Procedure section 1021 was applicable, in addition to section 1717, due to the broad wording of the attorney fees clause. Was the action, or any part of it, on the contract for purposes of section 1717 of the Civil Code? Although only one of the 10 causes of action in plaintiffs' first amended complaint was for breach of contract, there were, intertwined within the other causes of action (including declaratory relief and breach of fiduciary duty), allegations that defendants failed to comply with duties owed under the operating agreements. A complicating factor was that the issues raised in the pleadings were later distilled and reformulated into the parties' stipulation to have disputed issues resolved by the Referee. Still, we do not disagree that many of the disputed issues were contractual in nature, even

14.

though the relief given was essentially that of declaratory relief. In this regard, we note that a cause of action may be on a contract where the relief granted is declaratory relief regarding the parties' rights under the contract (*Silver Creek, LLC v. BlackRock Realty Advisors, Inc*. (2009) 173 Cal.App.4th 1533, 1538; *Exxess Electronixx v. Heger Realty Corp*. (1998) 64 Cal.App.4th 698, 710-711) and/or where it is for breach of fiduciary duty arising out of a contract (*Kangarlou v. Progressive Title Co.*, *Inc*. (2005) 128 Cal.App.4th 1174, 1178).

However, it is unnecessary for us to dissect the disputed issues to decide which of them were on the contract since, in this case, not only were such issues intertwined with the other claims, but more importantly, the attorney fees provisions were so broad that they included *all* of the litigated issues.[9] "While it is clear that an attorney fee provision may authorize an award of fees only to the party who prevails on a claim to enforce the terms of the contract containing that provision, it is equally clear that an attorney fee provision need not be so limited." (*Maynard*, *supra*, 216 Cal.App.4th at p. 991.) As recognized by Code of Civil Procedure section 1021, contracting parties may reach a broader agreement for attorney fees encompassing any litigation between them, including claims sounding in tort or contract. (See, e.g., *Maynard*, *supra*, at pp. 989-993; *Miske v. Coxeter*, *supra*, 204 Cal.App.4th at p. 1259; *Hasler v. Howard* (2005) 130 Cal.App.4th 1168, 1171; *Xuereb*, *supra*, 3 Cal.App.4th at p. 1342.) That is precisely what occurred here.

Although in some instances the wording of a particular attorney fees provision may be unclear as to "whether the parties intended fees to be recovered by the party who prevails only on a breach of contract claim or by the party who prevails in a broader

---

[9]     Along the same lines, "[i]f the attorney fee provision is broad enough to encompass contract and noncontract claims, in awarding fees to the prevailing party it is unnecessary to apportion fees between those claims." (*Maynard*, *supra*, 216 Cal.App.4th at p. 992, citing *Cruz v. Ayromloo* (2007) 155 Cal.App.4th 1270, 1277.)

sense, considering the action as a whole" (*Maynard*, *supra*, 216 Cal.App.4th at p. 990), that was not the case here. In this case, the attorney fees were awarded to plaintiffs based on the following provision, which was set forth in both of the operating agreements: "In the event that any dispute between the Company and the Members or among the Members should result in litigation, the prevailing party in such dispute shall be entitled to recover from the other party all reasonable costs and expenses of the prevailing party, including, without limitation, reasonable attorney's fees and expenses." We agree with the Referee that this expansive language referring to *any dispute* among the members that results in litigation "on its face covers all disputes of whatever nature or legal formulation that were actually litigated between [plaintiffs] and [defendants] in this action." Thus, when plaintiffs filed their lawsuit, the fee provisions were activated and applied to the entire scope of the dispute that was litigated below.

## III. No Abuse of Discretion in Finding that Plaintiffs Prevailed

We next consider defendants' challenge to the finding that plaintiffs were the prevailing parties in the litigation. "The trial court's determination of the prevailing party for purposes of awarding attorney fees is an exercise of discretion which should not be disturbed on appeal absent a clear showing of abuse of discretion." (*Ritter & Ritter, Inc. Pension & Profit Plan v*. *The Churchill Condominium Assn*. (2008) 166 Cal.App.4th 103, 126.) Under Civil Code section 1717, the prevailing party in a contract action is the one who obtained "a greater relief" thereon. (*Id*., subd. (b)(1).) "If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." (*Scott Co. v. Blount, Inc*. (1999) 20 Cal.4th 1103, 1109.) "[I]n determining litigation success, courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.' For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise

16.

achieved its main litigation objective." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 877, italics omitted.)

As to noncontract claims beyond the reach of Civil Code section 1717 (i.e., tort causes of action), "a court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation objectives, whether by judgment, settlement, or otherwise." (*Santisas v. Goodin*, *supra*, 17 Cal.4th at p. 622.) Code of Civil Procedure section 1032 provides that a prevailing party includes the party "with a net monetary recovery .…" (*Id.*, subd. (a)(4).) "When any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court .…" (*Ibid*.) Where, as here, the attorney fees provisions were so broad in scope that they applied to the entire controversy or litigation regardless of the nature of the claims, "the prevailing party entitled to recover fees normally will be the party whose net recovery is greater, in the sense of most accomplishing its litigation objectives .…" (*Maynard*, *supra*, 216 Cal.App.4th at p. 992.)[10]

Applying these principles, it is clear that the Referee's determination (confirmed by the trial court) that plaintiffs prevailed in the litigation was not an abuse of discretion. The Referee based his determination on the fact that plaintiffs received a favorable ruling on the vast majority of the disputed issues in the litigation. Those issues began with the

---

[10]     *Maynard* also held that, in such cases, the contract cause of action should not be viewed in isolation from the related causes of action, but the question of which party prevailed should be determined from the litigation as a whole: "One should not 'confuse the notion of prevailing in the lawsuit with that of prevailing "on the contract."' [Citation.] While prevailing on the contract is alone significant if the attorney fee provision limits fee entitlement to the party prevailing on the contract claim, it is not controlling if the provision authorizes fees to the party prevailing in the resolution of the entire controversy." (*Maynard*, *supra*, 216 Cal.App.4th at p. 993; see also pp. 992-995.) The court held that where the latter type of fees provision is involved, a party could prevail in the entire controversy and thus be the sole prevailing party under the fee provision, "whether or not that party prevailed on a contract cause of action." (*Id.* at p. 992.)

17.

pleadings, but later were distilled and narrowed into the matters set forth in the parties' stipulation. As explained by the Referee in the interim ruling on motions for costs and attorney fees: "Though the [first amended complaint] is pled expansively and in detail, the Stipulation for the Reference and the course of the proceedings narrowed the issues in the case to a few defined claims presented and contested in a variety of ways during the Reference ...." After enumerating the principal disputed issues in the litigation pursuant to the parties' stipulation, the Referee summarized how plaintiffs were predominantly successful:

> "The [plaintiffs] fit within every conceivably applicable definition of 'prevailing party' with respect to all but two of these litigated issues. The Referee found, contrary to the position taken by [defendants] and consistent with the position taken by [plaintiffs], that (1) the [Simonian Fruit Company] loans were not legitimately incurred by [defendants] on behalf of either LLC and that there was no other legal basis upon which [Simonian Fruit Company] could enforce any of the loans against either of the LLCs, (2) [defendants] were not entitled to credits to their capital accounts in the amounts of the unpaid annual carryovers of the loans, (3) [plaintiffs] were entitled to indemnity for all payments made by [plaintiffs] for maintenance of the Elkhorn property and for all payments made by [plaintiffs] on the Met Life debts against the LLCs except for the last balloon payment of $296,000 on the Arvin Met Life debt, (4) the Memorandum had no legal effect after the [operating agreements] became effective, and (5) the Elkhorn [LLC] development costs were not to be considered capital contributions of [defendants]. The only issues found by the Referee in accord with the positions taken by [defendants] and contrary to the positions taken by [plaintiffs] were that (1) if Arvin [LLC] defaulted on its assumed obligation to pay the final installment on the Met Life debt when it was due, [defendants] were not obliged to indemnify [plaintiffs] for the payment of the final installment of the Arvin [LLC] Met Life debt, and (2) the amount of the Arvin [LLC] Met Life debt should remain as a stated liability on the balance sheet of Arvin [LLC].

> "Consequently, [plaintiffs] obtained greater relief with respect to the litigated issues and achieved all but two of their litigation objectives with respect to those issues. [Citations.] This outcome was not an equally good news, bad news proposition for both parties; it was instead largely good news for [plaintiffs] and largely bad news for [defendants]. [Citation.]

18.

… [Defendants] won a couple of battles but [plaintiffs] won all the others and the war. [Citation.] In practical effect, the outcome of the prevaluation aspect of this case was a declaration in favor of [plaintiffs] with respect to most of the disputes in issue. [Citation.]"

The Referee's conclusion that plaintiffs were the prevailing parties was clearly correct. For the reasons thoroughly explained within the Referee's ruling, which are supported by the record, plaintiffs obtained the greater relief and succeeded in most of its litigation objectives.[11] Defendants have failed to demonstrate any abuse of discretion on this point.

We also find unpersuasive defendants' argument that since no judgment for damages was entered under plaintiffs' first amended complaint, plaintiffs could not have prevailed. We disagree with this argument because, in deciding which party prevailed, courts look to substance over form. (*Hsu v. Abbara*, *supra*, 9 Cal.4th at p. 877.) The issues in the pleadings were, by stipulation, narrowed and submitted to the Referee for litigation and trial. Plaintiffs prevailed in that litigation by obtaining what was, in essence, declaratory relief on the various disputed issues of contractual and fiduciary obligations. And, although damages were not awarded to plaintiffs, the determinations on the disputed issues ultimately resulted in a greatly enhanced valuation of their interests in the LLCs. As the Referee correctly explained: "The decisions on the litigated issues did result in accounting adjustments rather than damages, but [plaintiffs] nonetheless

---

[11] Defendants argue that since Simonian Fruit Company was not itself a party to the action, the Referee could not make a binding decision that Simonian Fruit Company could not enforce the debts against the LLCs. Defendants' point is misplaced, since what mattered was that the Referee *did* resolve, in plaintiffs' favor, how the disputed debt would be treated as between the parties to the litigation. Also, the Referee was well aware that Simonian Fruit Company was not a party and might have sought to bring a separate action to enforce the debts. The Referee noted that said issue became moot when, based on valuations that did not consider the Simonian Fruit Company loans as liabilities of the LLCs, plaintiffs' interests in the LLCs were finally bought out and judgment entered.

19.

'realized [their] litigation objectives' with respect to the main litigated disputes .…
[Citation.]"  For example, plaintiffs' litigation success with respect to the Simonian Fruit
Company loans to the LLCs "operated to [plaintiffs'] direct, positive financial advantage,
which was ultimately realized by the purchase payments required of [defendants] under
the Alternative Decree."  Finally, the attorney fees provisions set forth in the operating
agreements were sufficiently broad in scope to allow the Referee (and trial court) to
reasonably determine that plaintiffs were the prevailing parties within the meaning of the
parties' attorney fees provisions, even though no monetary damages were awarded under
plaintiffs' causes of action.

**IV.     Right to Contractual Fees Was Not Trumped by Section 17351(b)**

Defendants' main contention on appeal is that the award of attorney fees was
improper because, once they invoked their purchase rights under section 17351(b), any
contractual right to recover attorney fees was supplanted by the special proceedings in
section 17351(b).  We begin our consideration of this argument by reviewing the
language and purpose of section 17351.

*A.        Overview of Section 17351(b) Proceedings*

Subdivision (a) of section 17351 provides for judicial dissolution of LLCs.  It
states that pursuant to an action filed by any member or manager of an LLC, a court "may
decree the dissolution of [an LLC]" whenever certain conditions occur, including "[t]he
management of the [LLC] is deadlocked or subject to internal dissention" and/or "[t]hose
in control of the [LLC] have been guilty of, or have knowingly countenanced persistent
and pervasive fraud, mismanagement, or abuse of authority."  (§ 17351, subd. (a)(4) &
(5).)

When such an action is filed, subdivision (b) of section 17351 gives the other
members the option of avoiding dissolution by buying out the interests of those seeking
dissolution.  Specifically, section 17351(b)(1) states, in part:  "In any suit for judicial
dissolution, the other members may avoid the dissolution of the [LLC] by purchasing for

20.

cash the membership interests owned by the members so initiating the proceeding (the 'moving parties') at their fair market value."

Section 17351(b)(2) furnishes a procedure to obtain a court-ordered stay of the dissolution action. It states: "If the purchasing parties (A) elect to purchase the membership interests owned by the moving parties, (B) are unable to agree with the moving parties upon the fair market value of the membership interests, and (C) give bond with sufficient security to pay the estimated reasonable expenses, including attorneys' fees, of the moving parties if the expenses are recoverable under paragraph (3), the court, upon application of the purchasing parties, either in the pending action or in a proceeding initiated in the superior court … by the purchasing parties, shall stay the winding up and dissolution proceeding and shall proceed to ascertain and fix the fair market value of the membership interests owned by the moving parties." (§ 17351(b)(2).)

Section 17351(b)(3) then provides for a special appraisal or valuation process, which is followed by the trial court's issuance of an alternative decree. It states: "The court shall appoint three disinterested appraisers to appraise the fair market value of the membership interests owned by the moving parties, and shall make an order referring the matter to the appraisers so appointed for the purpose of ascertaining that value. The order shall prescribe the time and manner of producing evidence, if evidence is required. The award of the appraisers or a majority of them, when confirmed by the court, shall be final and conclusive upon all parties. The court shall enter a decree that shall provide in the alternative for winding up and dissolution of the [LLC] unless payment is made for the membership interests within the time specified by the decree. If the purchasing parties do not make payment for the membership interests within the time specified, judgment shall be entered against them and the surety or sureties on the bond for the amount of the expenses, including attorneys' fees, of the moving parties.…" (§ 17351(b)(3).)

As should be apparent, the objective of section 17351(b)(3) is to provide a buyout option as an alternative to dissolution through use of a summary process to ascertain fair

21.

market value. (See *Abrams v. Abrams-Rubaloff & Associates, Inc.* (1980) 114 Cal.App.3d 240, 247-248 [§ 2000 is special summary proceeding where usual rules of procedure do not apply]; *Trahan v. Trahan* (2002) 99 Cal.App.4th 62, 75 [stating objectives of § 2000].) The summary process utilizes three court-appointed appraisers to assess the fair market value of the interests of the members seeking dissolution, with the court then issuing an alternative decree based on the appraisers' reports. Although evidence is permitted, if required, the proceeding is not a trial between adversaries attempting to prove their respective cases to a trier of fact. Rather, it is a submittal of the valuation question to a special appraisal process, "with minimal expenditure of time and money that would otherwise be spent in litigation" (*Go v. Pacific Health Services, Inc.* (2009) 179 Cal.App.4th 522, 531), and concerning which "[t]he award of the appraisers or a majority of them, when confirmed by the court, shall be final and conclusive upon all parties" (§ 17351(b)(3)).

It is also clear that attorney fees are recoverable in the statutory proceedings if the party invoking section 17351(b) fails to timely complete the purchase and, in that event, the bond would be looked to for the recovery of such fees. (§ 17351(b)(3).) The attorney fees addressed by the statute are only those incurred in the appraisal process itself. (*Go v. Pacific Health Services, Inc.*, *supra*, 179 Cal.App.4th at p. 531 [construing § 2000].)[12]

### B. Merits of Defendants' Argument

To recapitulate, defendants' position is that once they served their notice of exercise to purchase plaintiffs' interests in the LLCs under section 17351(b), that section and the special proceedings established therein governed the issue of whether attorney fees were awardable in this case. According to defendants, not only was

---

[12] We note the Referee excluded from the award, any attorney fees that may have been incurred during the appraisal proceeding itself and, to that limited extent, the Referee agreed the statute supplanted other grounds for attorney fees. That aspect of the Referee's decision is not in dispute.

plaintiffs' claim for involuntary dissolution automatically stayed, but the parties' entire litigation of disputed issues was supplanted by, or subsumed under, section 17351(b). In other words, once section 17351(b) was invoked, the litigation of disputed issues became incidental to, or part-and-parcel of, the statutory appraisal and buyout process. Under this theory, plaintiffs could only recover attorney fees to the extent authorized under section 17351(b); that is, if defendants failed to timely complete the purchase. And since defendants timely completed the purchase, no attorney fees could be awarded—or so the argument goes.

Preliminarily, we reject the argument that the entirety of the underlying lawsuit and the litigation of disputed issues were automatically stayed merely by defendants giving notice of their intention to purchase plaintiffs' interests under section 17351(b). The statute sets forth a particular procedure to be followed for obtaining a *court-ordered* stay of dissolution. (See § 17351(b)(2).) Defendants failed to obtain such a prelitigation stay order. Instead, they intentionally chose by their stipulation to litigate certain disputed issues in advance of implementing the appraisal and buyout process. As that stipulation expressly provided, "the issue of the legal effect of Defendants['] exercise of Corporations Code [section] 17351(b) Right to Purchase Membership Interest of Members … shall not be determined until all other legal and equitable determination shall first be made, including any accountings deemed necessary by [the Referee]." Accordingly, we find no merit in defendants' argument that an alleged stay precluded the award of attorney fees concerning disputed issues that the parties' *agreed to* litigate and, in fact, *did* litigate.

Defendants further argue that section 17351(b), once invoked, operated to supplant plaintiffs' entire action and the litigation of disputed issues, including any right to contractual attorney fees therein. In support of this theory, defendants refer to *Go v. Pacific Health Services, Inc*., *supra*, 179 Cal.App.4th 522, a case that involved

23.

section 2000, the parallel statute applicable to corporations. We now consider that case in detail.

In *Go v. Pacific Health Services, Inc.*, the plaintiff (Go) filed a complaint seeking the involuntary dissolution of a close corporation of which she was a shareholder. Go also sought damages in her complaint based on claims of breach of fiduciary duty and fraud. (*Go v. Pacific Health Services, Inc.*, *supra*, 179 Cal.App.4th at p. 527.) The defendants, who were the other shareholders of the corporation, filed a cross-complaint for breach of contract, misappropriation of corporate opportunities, and breach of duty of loyalty. The defendants subsequently sought to purchase Go's shares under section 2000 by moving for a stay of the dissolution proceedings and requesting that the value of Go's shares be fixed by the appraisal process set forth in section 2000. The trial court granted the stay of the dissolution proceedings, appointed the appraisers, and upon receiving the appraisers' reports, determined the value of the Go's shares in the corporation. Pursuant to section 2000, the trial court then issued an alternative decree that the defendants pay Go the value of her shares by a certain date, or, in the alternative, the involuntary winding up and dissolution "'shall proceed immediately.'" (*Go v. Pacific Health Services, Inc.*, *supra*, at p. 529.) The defendants, even though they had commenced the appraisal and buyout proceedings under section 2000, appealed from the alternative decree on the ground that they still had a right to litigate or "'defend themselves'" on the merits of Go's claim for involuntary dissolution. (*Go v. Pacific Health Services, Inc.*, *supra*, at p. 529.)

The Court of Appeal in *Go v. Pacific Health Services, Inc*. rejected the defendants' contention, holding that when the defendants obtained a stay of the dissolution proceedings and implemented the appraisal process of section 2000, they were agreeing to use that summary proceeding in lieu of litigating their claims in the involuntary dissolution action: "[T]hat is precisely the concession [the] defendants chose when they elected to proceed under section 2000." (*Go v. Pacific Health Services, Inc.*, *supra*, 179 Cal.App.4th at p. 531.) As the Court of Appeal further explained: "[The defendants]

could have chosen to litigate their cross-complaint and defend the … action for involuntary dissolution on its merits. They chose instead to use the summary procedure afforded by section 2000, which resulted in a stay of the dissolution proceedings, valuation of the corporation, and an alternative decree to either pay Go the designated amount or have judgment of dissolution entered against them. If this were not the inevitable outcome, then all majority shareholders facing an action for involuntary dissolution would invoke section 2000 if only for the purpose of delay, with nothing to lose other than the expense of the appraisal and attorney fees, knowing they could eventually litigate the action for involuntary dissolution on its merits. The plain language of section 2000, and the apparent legislative purpose inherent in the language of the statute, do not permit such an interpretation." (*Id*. at pp. 531-532.) It was in this context that the Court of Appeal stated: "The procedure permitted by section 2000, which is entirely optional, embodies a summary proceeding which supplants the action for involuntary dissolution pursuant to section 1800." (*Id*. at p. 530.)

Based on the above quoted language, defendants maintain that the entire litigation in the present case was likewise supplanted by section 17351(b) and exclusively governed by it, including the issue of attorney fees.[13] Plaintiffs disagree, countering that *Go v. Pacific Health Services, Inc*., *supra*, 179 Cal.App.4th 522 merely stands for the proposition that the party invoking the special proceedings under section 2000 (or § 17351(b)) to avoid dissolution does so at a cost; that is, that party gives up his or her right to litigate the dissolution cause of action on the merits. However, according to plaintiffs, the party seeking dissolution of a corporation or LLC in an action that includes other claims does not lose its right to litigate those *other* claims when the defendant

---

[13] We note that although section 17351(b)(3) specifies when attorney fees may be awarded in the statutory appraisal/valuation process, it says nothing about the availability of attorney fees in other contexts (e.g., litigation preceding the appraisal/valuation process).

invokes its right to avoid dissolution under section 2000 (or § 17351(b)). In other words, plaintiffs' position is that "*Go* does not hold … that Corporations Code §17351 provides a vehicle by which a party invoking its right to avoid dissolution can also make claims other than the dissolution cause of action … simply disappear without any litigation or trial on the merits of those claims (i.e. be 'supplanted')."[14]

Having briefly framed the issue, we resolve it without the necessity of statutory construction of section 17351(b). We need not decide whether, in some contexts, the invocation of section 17351(b) (in conjunction with obtaining a stay of the dissolution action and initiating the appraisal proceedings), would potentially operate in the manner suggested by defendants with respect to contractual attorney fee recovery. Here, it is simply not an issue because the parties *expressly agreed* that prior to implementing or proceeding with the statutory appraisal process, they were going to first litigate certain disputed issues. It is not as though the litigation was stopped or stayed so that the parties' respective claims could then be submitted to the appraisers to assess how such claims might impact the LLCs' appraised values.[15] Rather, the parties entered the stipulation to engage in *litigation* to resolve their disputed issues *before* going forward with the special appraisal process. *Go v. Pacific Health Services, Inc.*, *supra*, 179 Cal.App.4th 522 is readily distinguishable on that ground alone, and also because in *Go*, the party seeking to

---

**14** The Referee's view was in accord with this. The Referee held that while "the optional valuation and buy out proceeding under section 17351, subdivision (b), supplanted [plaintiffs'] cause of action for involuntary dissolution," the mere fact that plaintiffs did not obtain an involuntary dissolution "did not inactivate the fee provision or deprive [plaintiffs] of their status as the prevailing parties in the action."

**15** There is case law suggesting that some types of pending claims or lawsuits may be *valued* by the appraisers (e.g., as assets) and accounted for when ascertaining the fair market value of the interest in the corporation or LLC. (*Cotton v. Expo Power Systems, Inc*. (2009) 170 Cal.App.4th 1371, 1381 [value of derivative action could be appraised].) That possibility was not an issue here, because the parties did not submit their claims to the appraisers for an assessment of value, but litigated the disputed issues beforehand.

pursue the dissolution action had already obtained a stay order and actually submitted the valuation issue to the appraisers. Here, by contrast, the parties actually, separately and extensively litigated the disputed issues to complete resolution before proceeding with the summary appraisal process.

For these reasons, when plaintiffs prevailed in the litigation of those issues, the Referee was correct in treating the litigation as distinct from the statutory appraisal/valuation proceedings under section 17351(b) for purposes of awarding attorney fees under the contractual provision. The Referee properly found that although many issues were resolved as balance sheet adjustments, "these adjustments were not an 'integral part' of the section 17351 valuation proceedings; *they were litigated disputes between the members over balance sheet entries that were required to be decided before the valuation proceedings could go forward*." (Italics added, fn. omitted.) The Referee further held: "It is true that the resolution of the preexisting disputes which prompted this litigation affected the final valuation of [plaintiffs'] interests in the LLCs, but none of the decisions on those issues, alone or collectively, established the actual fair market valuations for purposes of the statutory buy out of [plaintiffs'] interests. Instead, the resolution of the preexisting disputes set the stage, in the form of the restated balance sheets of the LLCs, for the valuations determined by the appraisers … in a summary proceeding outside the adversary processes of conventional litigation."

To summarize, as stated in the operating agreements of the LLCs, the parties agreed that in the event that "any dispute" between them "result[ed] in litigation, the prevailing party in such dispute shall be entitled to recover" reasonable attorney fees. Such a dispute occurred here, resulting in extensive litigation between the parties. Although defendants served a notice of exercise of their right to purchase plaintiffs' interests in the LLCs pursuant to section 17351(b), the parties agreed by stipulation to litigate the disputed issues before proceeding with or implementing the summary appraisal/valuation proceedings under that statute. On this record, we hold that when

27.

plaintiffs prevailed on a majority of the litigated issues, the Referee (and trial court) properly granted plaintiffs' motion for an award of attorney fees.

## **<u>DISPOSITION</u>**

The order awarding attorney fees to plaintiffs is affirmed.  Costs on appeal are awarded to plaintiffs.


_____

Kane, J.

WE CONCUR:


_____

Cornell, Acting P.J.


_____

Detjen, J.