Filed 1/7/14  Smith v. Arakelian CA24

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| WILLIAM SMITH,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>GARY ARAKELIAN,<br><br>        Defendant and Appellant. | B247253<br><br>(Los Angeles County<br>Super. Ct. No. BC435220) |

APPEAL from judgment of the Superior Court of Los Angeles County, Michael Johnson, Judge.  Affirmed.

Schreiber & Schreiber, Edwin C. Schreiber and Eric A. Schreiber for Defendant and Appellant.

Charlston, Revich & Wollitz and Tim Harris for Plaintiff and Respondent.

_____

This is an appeal from a judgment granting respondent William Smith attorney fees and costs. Appellant Gary Arakelian and Mr. Smith were co-owners of Ventura Investors Group (VIG), a California limited liability company. The fee award arose from an action by Mr. Smith to dissolve the company or induce a buyout. Mr. Arakelian argues Mr. Smith did not prevail in the action, and thus should not receive attorney fees or costs. We disagree.

### FACTUAL AND PROCEDURAL SUMMARY

Mr. Arakelian and Mr. Smith incorporated VIG in January 2005. They served as the company's only co-managers, each owning 50 percent of the shares. Governed by a written operating agreement, VIG's primary purpose was to own and operate real property. Its only asset was an office building at 11326 Ventura Boulevard in Studio City. Pursuant to their agreement, Mr. Arakelian managed remodeling and real estate activities, while Mr. Smith handled bookkeeping and tax matters.

Sometime in 2010, Mr. Smith became concerned with Mr. Arakelian's conduct in managing the company. He claimed Mr. Arakelian "tried to act as if the LLC belong[ed]" only to him. Mr. Smith contended Mr. Arakelian reneged on agreements to sell the property, demanded capital contributions and administrative fees, claimed Mr. Smith was in default for refusal to pay such fees, and planned to engage in contracts without Mr. Smith's signature, which the operating agreement required. In April 2010, Mr. Smith filed a complaint seeking dissolution and accounting of VIG pursuant to former Corporations Code section 17351, subdivision (a).[1] He sought reimbursement within 15 days of a court decree confirming the appraisal of his shares, or in the alternative, the dissolution and windup of the company.

Mr. Arakelian hired attorney Joel Farkas to oppose Mr. Smith's complaint on behalf of VIG, and at the expense of the company. Mr. Arakelian joined in VIG's

---

[1]     Former Corporations Code section 17351 was repealed and reenacted as Corporations Code section 17707.03 without substantive change. (Stats. 2012, ch. 419, § 19 [repealed]; Stats. 2012, ch. 419, § 20 [reenacted].) We use both section numbers in this opinion.

demurrer to Mr. Smith's complaint.[2] In his answer, Mr. Arakelian denied "each and every allegation and contention made in [Mr. Smith's] complaint" and raised six affirmative defenses. He also asserted an affirmative defense that VIG's operating agreement prohibited dissolution. When Mr. Arakelian refused to participate in his deposition, the court imposed monetary sanctions and twice ordered him to appear. It also granted a motion for entry of a preclusion sanction that prevented Mr. Arakelian from contesting Mr. Smith's complaint for dissolution.

Mr. Smith filed a motion seeking to disqualify Mr. Farkas from representing VIG, and to prevent Mr. Arakelian from using company funds for the litigation. In August 2010, the court ordered Mr. Arakelian to account for fees and costs, and disqualified Mr. Farkas. We denied Mr. Arakelian's petition for writ of supersedeas (*Smith v. Ventura Investors Group, LLC* (Sept. 22, 2010, B226761) [nonpub. opn.]), and affirmed the order disqualifying Mr. Farkas and prohibiting the use of VIG funds in the dispute. (*Smith v. Ventura Investors Group, LLP et al.* (June 7, 2011, B226761) [nonpub. opn.].)

In September 2011, Mr. Arakelian moved to purchase Mr. Smith's interest in VIG pursuant to former Corporations Code section 17351, subdivision (b)(1), now Corporations Code section 17707.03, subdivision (c)(1), under the terms of the operating agreement. Mr. Smith opposed the motion because Mr. Arakelian sought a buyout only after more than a year spent contesting the dissolution action. Mr. Smith also was concerned that granting the buyout motion might prejudice his ability to recover attorney fees incurred due to Mr. Arakelian's delay in seeking a buyout. However, the court granted the motion and appointed three appraisers. By April 2012, all three appraisers valued Mr. Smith's 50 percent interest in VIG at $700,000. The court denied Mr. Arakelian's motion to vacate the appraisal. Later Mr. Arakelian completed the buyout process under former Corporations Code section 17351, subdivision (b), now Corporations Code 17707.03, subdivision (c), by tendering $700,000 to Mr. Smith. In

---

[2] The record on appeal does not indicate the outcome of the demurrer.

December 2012, the court dismissed Mr. Smith's original complaint, found him to be the prevailing party, and awarded him $96,518 in attorney fees and costs pursuant to the fee clause in the operating agreement. It denied Mr. Arakelian's motion for attorney fees. He filed a timely notice of appeal.

## DISCUSSION

Mr. Arakelian argues the trial court erred in determining Mr. Smith was the prevailing party in the dispute pursuant to Civil Code 1717.[3] He contends the judgment awarding attorney fees and costs to Mr. Smith should be reversed.

Code of Civil Procedure section 1032, subdivision (a)(4) provides courts with the discretion to award costs to the "prevailing party" in an action. In contract actions, section 1717, subdivision (a) requires courts to award reasonable attorney fees and costs to the "party prevailing."[4] Here, the company's operating agreement, signed by both Mr. Arakelian and Mr. Smith, sets forth the buyout procedures during a dissolution event and provides for attorney fees and costs to the prevailing party in a dispute. This contract forms the basis for the present appeal. Because the "prevailing party" definition of Code of Civil Procedure section 1032 is "not determinative" in contract disputes, the "party prevailing" definition of section 1717 governs our analysis. (*Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 438.) "'California courts liberally construe the term "'"on a contract"'" as used within section 1717. [Citations.] As long as the action "involve[s]" a contract it is "'on [the] contract'" within the meaning of section 1717. [Citations.]'" (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894 (*Blickman Turkus*).) The "party prevailing" is "the party who recovered a greater relief in the action on the contract." (§ 1717, subd. (b)(1).)

Two cases are instructive for determining how to apply the section 1717 prevailing party definition to the present matter. "[T]he trial court is to compare the relief awarded

---

[3]     All statutory references are to the Civil Code, unless otherwise indicated.

[4]     When authorized by contract, attorney fees are permissible as costs. (Code Civ. Proc., § 1033.5, subd. (a)(10).)

4

on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. [This] determination is to be made . . . only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' [Citation.]" (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876 [finding party obtaining "simple, unqualified win" on single contract claim was party prevailing and entitled to attorney fees under section 1717].) Courts "should be guided by 'equitable considerations.' For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective. [Citations.]" (*Id.* at p. 877.) Where "an action is dismissed, a court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation objectives, whether by judgment, settlement, or otherwise. [Citation.]" (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 622 (*Santisas*) [finding defendants were prevailing parties where plaintiffs voluntarily dismissed the action].)

We review a court award of attorney fees to a prevailing party for abuse of discretion. (*Silver v. Boatwright Home Inspection, Inc.* (2002) 97 Cal.App.4th 443, 449.) """"Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.""" (*Ibid.*) "The trial court exercises a particularly 'wide discretion' in determining who, if anyone, is the prevailing party for purposes of section 1717(a)." (*Blickman Turkus*, *supra*, 162 Cal.App.4th at p. 894.)

The trial court did not err in designating Mr. Smith as the prevailing party. When he filed his initial complaint, Mr. Smith sought the appraisal of his ownership interest and a timely buyout, and if that was not possible, an order of dissolution. From the beginning, his litigation objective was clear: to quickly disassociate from the company,

5

and obtain compensation for his ownership interest.  By the time he moved to purchase Mr. Smith's interest in the company, Mr. Arakelian had opposed the complaint for over one year, had resisted cooperating with depositions, and had challenged the unanimous appraisal.  The court granted a motion to sanction and preclude him from contesting Mr. Smith's dissolution petition.  By all indications, Mr. Arakelian attempted to prevent Mr. Smith from achieving his litigation objective.  When Mr. Arakelian later paid Mr. Smith $700,000 for his interest in the company, Mr. Smith received what he wanted, although at a later date than he had requested in his complaint.  Thus, the trial court did not abuse its discretion in finding Mr. Smith to be the prevailing party.

Mr. Arakelian contends Mr. Smith was not the prevailing party because the court dismissed his original petition for dissolution, and he did not receive any monetary recovery since the appraised value merely compensated Mr. Smith for his preexisting interest in the company.  To the contrary, as the court in *Santisas* observed, "it seems inaccurate to characterize the defendant as the 'prevailing party' if the plaintiff dismissed the action only after obtaining, by means of settlement or otherwise, all or most of the requested relief . . . ."  (*Santisas*, *supra*, 17 Cal.4th at p. 621.)  Here, the court dismissed Mr. Smith's complaint after he received payment from Mr. Arakelian, and achieved his requested relief.  Most significantly, Mr. Smith would not have received a buyout of his interest pursuant to former Corporations Code section 17351, subdivision (b), now Corporations Code section 17707.03, subdivision (c), without filing his original action.  (Former Corp. Code, § 17351, subd. (b)(1) ["*In any suit for judicial dissolution*, the other members may avoid the dissolution of the limited liability company by purchasing for cash the membership interests owned by the *members so initiating the proceeding . . . .*" (Italics added.)].)  Thus, it was no abuse of discretion to designate Mr. Smith as the prevailing party.

Mr. Arakelian argues that Mr. Smith opposed the buyout, so when Mr. Arakelian tendered $700,000 to him, Mr. Smith did not achieve his alleged objective of dissolving the company.  Mr. Arakelian claims the court in *Merlino v. Fresno Macaroni Mfg. Co.*

6

(1946) 74 Cal.App.2d 120 (*Merlino*), held that a party prevailed when it purchased the interest of another party seeking dissolution. The court reasoned that where "[p]laintiffs failed to obtain what they sought in their complaint and defendants obtained the affirmative relief prayed for in their answer," the defendants who completed the buyout prevailed. (*Id.* at p. 125.) That case does not support Mr. Arakelian's argument for several reasons. First, unlike the defendants in *Merlino*, Mr. Arakelian never prayed for the buyout remedy in his answer. Second, the plaintiffs in *Merlino* sought dissolution, and "did not retreat [from that position] until shortly before the termination of the litigation." (*Ibid.*) To the contrary, Mr. Smith sought a buyout, and in the alternative, dissolution of the corporation. He opposed Mr. Arakelian's buyout motion largely because it was untimely. Over the course of a year, Mr. Arakelian contested Mr. Smith's complaint, resisted cooperating with discovery, and challenged the unanimous appraisal. Finally, Mr. Smith achieved the relief he sought in his complaint when Mr. Arakelian paid him $700,000. As a result, *Merlino* does not support Mr. Arakelian here, and the court did not abuse its discretion in designating Mr. Smith as the prevailing party.

Mr. Arakelian also contends that as a matter of law Mr. Smith cannot be the prevailing party once Mr. Arakelian invoked his statutory buyout right. He claims that "once invoked, the statutory buyout process 'supplants the action for involuntary dissolution,'" which precludes the party seeking dissolution from prevailing. In support of his position, he cites *Panakosta Partners, LP v. Hammer Lane Management, LLC* (2011) 199 Cal.App.4th 612, 631 (*Panakosta*) [affirming trial court's denial of buyout motion for lack of jurisdiction because plaintiffs had dismissed original dissolution action], quoting *Go v. Pacific Health Services, Inc.* (2009) 179 Cal.App.4th 522 (*Go*) [party initiating action for involuntary dissolution opposed granting of motion for buyout on grounds that she should have been allowed to litigate dissolution claim].

In neither of these cases did the court address a prevailing party determination for purposes of awarding attorney fees. In *Go*, the court held that once a party invoked its statutory right to a buyout within the timeframe provided for in the court decree, the

7

opposing party had no right to continue contesting the dissolution action. (*Go*, *supra*, 179 Cal.App.4th at pp. 530-531.) The buyout remedy provides relief for parties who "aspire to buy out the moving party, with minimal expenditure of time and money that would otherwise be spent in litigation . . . ." (*Id*. at p. 531.) That finding is consistent with the dissolution and buyout framework in former Corporations Code section 17351, which provides a right to purchase a moving party's shares in order to preserve the corporation. However, this case is distinguishable. Here, Mr. Arakelian moved for a buyout only after the parties had incurred a year of litigation expenses. Although Mr. Smith initially opposed the buyout, he did so to preserve his ability to recover over a year of litigation costs. In addition, unlike in *Go*, Mr. Smith did not insist on pursuing only dissolution. Instead, Mr. Smith's original complaint requested buyout as one of two alternative remedies. After Mr. Arakelian offered a buyout, Mr. Smith accepted payment. As a result, the court did not abuse its discretion in finding Mr. Smith to be the prevailing party.

Mr. Arakelian also contends the timing of his buyout petition should not influence the court's determination as to which side is the prevailing party. The relevant standard requires that we examine "'the extent to which each party ha[s] succeeded and failed . . . in its contentions.'" (*Hsu*, *supra*, 9 Cal.4th at p. 876.) In doing so, we consider the "pleadings, trial briefs, opening statements, and similar sources." (*Ibid.*) Here, Mr. Arakelian's conduct prior to filing the buyout petition reveals his contentions, and accordingly, is relevant in the court's determination of his litigation objectives. (See *Santisas*, *supra*, 17 Cal.4th at p. 622.) During that time, he opposed Mr. Smith's complaint for a buyout or dissolution, as evidenced by his multiple filings. Under these circumstances, the court acted within its discretion in considering Mr. Arakelian's conduct during the time before his ultimate petition for a buyout.

Finally, Mr. Arakelian claims that affirming the trial court's finding that Mr. Smith is the prevailing party amounts to poor public policy and chills litigation because a plaintiff cannot be rewarded for achieving a remedy not afforded by law. He argues that

a party who refuses to purchase after the appraisal is only liable for expenses "incurred by the moving parties in the appraisal process." Mr. Arakelian relies on *Trahan v. Trahan* (2002) 99 Cal.App.4th 62, 75. In that case, a party appealed the trial court's confirmation of a negative appraised value of a corporation. (*Ibid.*) The case is consistent with former Corporations Code section 17351, now Corporations Code section 17707.03, which grants a moving party the right to attorney fees where a purchasing party elects and then reneges on a buyout. (Former Corp. Code, § 17351, subd. (b)(3).) Mr. Arakelian appears to argue that, since he ultimately accepted the buyout, he should not be responsible for any attorney fees or costs. However, Mr. Arakelian's buyout did not follow the typical buyout procedure. Unlike the defendant in *Trahan*, Mr. Arakelian not only refused to purchase Mr. Smith's shares immediately after the appraisal, but also contested the action for over a year before then. A purchasing party in an action for dissolution may avoid liability for most or all fees by promptly invoking its statutory right to a buyout under Corporations Code section 17707.03, subdivision (c). It is not against public policy to affirm an award of fees and costs to the prevailing party in this case.

## DISPOSITION

The judgment is affirmed. Respondent to have his costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**


EPSTEIN, P. J.


We concur:


WILLHITE, J.                                    MANELLA, J.

9