[No. B211054. Second Dist., Div. Four. Nov. 19, 2009.]

VILMA GO, Plaintiff, Cross-defendant and Appellant, v.
PACIFIC HEALTH SERVICES, INC., et al., Defendants,
Cross-complainants and Respondents.

[No. B212255. Second Dist., Div. Four. Nov. 19, 2009.]

VILMA GO, Plaintiff, Cross-defendant and Respondent, v.
PACIFIC HEALTH SERVICES, INC., et al., Defendants,
Cross-complainants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part I. of the Discussion.

Counsel

Law Office of Stewart J. Neuville and Stewart J. Neuville for Plaintiff, Cross-defendant and Appellant and for Plaintiff, Cross-defendant and Respondent.

Quintana Law Group, Andres F. Quintana and John M. Houkom for Defendants, Cross-complainants and Appellants and for Defendants, Cross-complainants and Respondents.

Opinion

**WILLHITE, Acting P. J.—**

## INTRODUCTION

Plaintiff Vilma Go filed a complaint seeking the involuntary dissolution of Pacific Health Services, Inc. (PHS), in which she had been a director and shareholder, pursuant to Corporations Code section 1800,[1] naming as defendants PHS, and David Sylvia and Paul Husen, the other directors and shareholders of PHS (sometimes collectively referred to herein as defendants). Defendants sought to avoid dissolution of PHS by purchasing Go's shares under section 2000 which, once invoked, requires the trial court to appoint three disinterested appraisers to assist the court in determining the valuation of the corporation at issue. After considering the reports of the appraisers, in accordance with the requirements of section 2000, the trial court stayed the dissolution proceeding and fixed the fair value of Go's shares, and thereafter entered a decree providing in the alternative for the winding up and dissolution of the corporation unless defendants made payment to Go for her shares, in the specified amount, within the time specified by the decree.

Go appeals from the decree, contending that the court's valuation of PHS was erroneous and undervalued her shares. Defendants also appeal from the decree, contending that the decree awarded Go relief to which she was not legally entitled: that if defendants did not make payment within the specified time, the involuntary winding up and dissolution of PHS would proceed immediately, without defendants being afforded the opportunity to litigate the merits of the action for involuntary dissolution. In the nonpublished portion of this opinion, we conclude that the trial court had substantial evidence before it that supported the valuation it reached. In the published portion of

---

[1] All further statutory references are to the Corporations Code.

this opinion, part II of the discussion, we conclude that the alternative decree issued by the trial court followed the statutory requirements set forth in the plain language of section 2000. Accordingly, we affirm the order/alternative decree in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

Go is a licensed nurse. In early 2003, Go and David Sylvia formed PHS, a California corporation that was eventually licensed and certified to provide Medicare and Medi-Cal home nursing and health care services. Go and Sylvia each owned half of the shares of PHS, and each made an initial investment of $30,000. Originally, Go and Sylvia were both directors and officers of PHS.

In early 2004, Sylvia and Go brought Paul Husen into the corporation as director of nursing. Husen, Go, and Sylvia each became one-third shareholders.

In early 2006, PHS received its certification from Medicare and Medi-Cal and obtained a county license, at which time the company became profitable. Until PHS obtained its licensure and certification, the business was not permitted to bill for its services.

Also in early 2006, Sylvia and Husen began paying themselves salaries of approximately $8,000 per month. Go did not receive a salary; Sylvia told her "there was not enough money."

Go contends that on August 8, 2006, Sylvia and Husen held an unnoticed board meeting at which they amended the bylaws in order to terminate her from the board of directors. Go contends that Sylvia and Husen set the price of Go's shares at $20,000, then issued to themselves company checks ($25,000 to Sylvia and $15,000 to Husen), which they used to fund personal checks which they sent to Go (for $10,000 from each of them). They then purported to transfer Go's shares to themselves.

Sylvia and Husen contend, however, that in February 2006, they learned that Go was breaching her duties to PHS by competing with it, and directing potential customers to competing agencies in return for monetary compensation. They assert that they properly removed her from the board of directors and compensated her for the fair market value of her shares.[2]

---

[2] The record contains copies of the reverse sides of Sylvia's and Husen's personal checks, on which Go made the notation "all rights reserved" when cashing the checks, thus preserving her standing to object to defendants' actions.

Go sued defendants on September 7, 2006, seeking the involuntary dissolution of PHS pursuant to section 1800, subdivision (b)(3) and (4).[3] Go also sought damages based on claims of breach of fiduciary duty and fraud (1) as a shareholder's derivative action, and (2) as a direct action brought by a shareholder and director. (*Go v. Pacific Health Services, Inc.* (Super. Ct. L.A. County, No. BC358117).)

On December 7, 2006, defendants filed a cross-complaint for breach of contract, misappropriation of corporate opportunities, and breach of the duty of loyalty.

On April 5, 2007, defendants filed a motion pursuant to section 2000 for an order to stay the dissolution proceedings.[4] They requested that the court set a valuation date of August 14, 2006, and fix the value of Go's shares.

Go filed a response to defendants' motion to stay the proceedings and fix the value of the shares. She did not oppose the request that the court

---

[3] A shareholder of a close corporation may file a verified complaint for involuntary dissolution of the corporation. (§ 1800, subd. (a).) Subdivision (b) of section 1800 provides: "The grounds for involuntary dissolution are that: [¶] . . . [¶] (3) There is internal dissension and two or more factions of shareholders in the corporation are so deadlocked that its business can no longer be conducted with advantage to its shareholders . . . . [¶] (4) Those in control of the corporation have been guilty of or have knowingly countenanced persistent and pervasive fraud, mismanagement or abuse of authority or persistent unfairness toward any shareholders or its property is being misapplied or wasted by its directors or officers."

[4] "[I]n any suit for involuntary dissolution, . . . the corporation or, if it does not elect to purchase, the holders of 50 percent or more of the voting power of the corporation (the 'purchasing parties') may avoid the dissolution of the corporation and the appointment of any receiver by purchasing for cash the shares owned by the plaintiffs or by the shareholders so initiating the proceeding (the 'moving parties') at their fair value." (§ 2000, subd. (a).)

Section 2000 continues, in relevant part: "(b) If the purchasing parties (1) elect to purchase the shares owned by the moving parties, and (2) are unable to agree with the moving parties upon the fair value of such shares, and (3) give bond with sufficient security to pay the estimated reasonable expenses (including attorneys' fees) of the moving parties if such expenses are recoverable under subdivision (c), the court upon application of the purchasing parties, . . . in the pending action . . . shall stay the winding up and dissolution proceeding and shall proceed to ascertain and fix the fair value of the shares owned by the moving parties.

"(c) The court shall appoint three disinterested appraisers to appraise the fair value of the shares owned by the moving parties, and shall make an order referring the matter to the appraisers so appointed for the purpose of ascertaining such value. The order shall prescribe the time and manner of producing evidence, if evidence is required. The award of the appraisers or of a majority of them, when confirmed by the court, shall be final and conclusive upon all parties."

Subdivision (f) of section 2000 provides: "For the purposes of this section, the valuation date shall be (1) in the case of a suit for involuntary dissolution under Section 1800, the date upon which that action was commenced . . . . However, . . . the court may, upon the hearing of a motion by any party, and for good cause shown, designate some other date as the valuation date."

determine the value of the corporation, but requested that the valuation date be set for the time of the actual valuation, i.e., sometime in 2007.

Defendants filed a reply.

On May 11, 2007, the court issued an order staying the dissolution proceedings, and providing for the appointment of three appraisers. The parties were to each choose one appraiser, and the two appraisers would then choose the third appraiser. The court ordered the valuation date to be September 7, 2006—the date Go filed suit—and ordered the appraisal to be concluded by September 14, 2007.

Go chose Barbara Luna, defendants chose Jeffrey Freeman, and together Luna and Freeman chose Stanley Deakin.

Defendants filed three unopposed ex parte applications to continue the required reporting date. The court eventually set May 31, 2008, as the date by which the appraisers were required to provide their reports. Go filed an unopposed ex parte application to continue the reporting date for an additional 45 days, but the court denied the application.

The three appraisers each filed a separate report, stating the value of 100 percent of the shares of PHS, including Go's shares.[5] Luna set the value of the corporation at $1,046,000, Freeman at $410,000, and Deakin at $600,000.

On June 3, 2008, the court held a conference with counsel and ordered them to meet and confer regarding the valuation. The parties could not agree on the value, but stipulated that the court could determine the value of the corporation based upon the appraisers' reports and briefing to be filed by the parties.

Go filed an opening brief, a reply brief, and a surreply brief, as did defendants.

The court held a hearing on July 31, 2008. The court issued a tentative ruling, which it later adopted as its order, in which it found the fair value of the PHS shares to be $466,500, and therefore Go's ownership interest was valued at $155,484. The court indicated that it had thoroughly considered

---

[5] In response to Go's section 1800 petition for involuntary dissolution of PHS, defendants claimed they had already paid Go for her shares and that she no longer owned any shares. However, the section 2000 proceeding was conducted based on the assumption that the appraisers were to value the corporation as a whole in order to establish the fair value of the shares presumptively owned by Go (in this case, one-third of the outstanding shares).

each of the three reports, but that it found Deakin's report and conclusions to be the most compelling. The court stated that it found Luna's appraisal to be "inflated and unreliable."

On August 22, 2008, Go filed a motion requesting issuance of an order directing payment of the value of her shares or, in the alternative, for the winding up and dissolution of the corporation, and for an award of expenses. Defendants filed opposition.

On September 19, 2008, the court issued an order directing PHS, Sylvia, and Husen to pay Go $155,484, within 45 days, and stating that "if this payment is not made within such time the involuntary winding up and dissolution of defendant corporation shall proceed immediately."

Go filed a notice of appeal on September 23, 2008.

Defendants filed a notice of appeal on November 17, 2008.

The parties later stipulated to consolidate the two appeals.

## DISCUSSION

### I. *Go's Appeal: Valuation of PHS**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. *Defendants' Appeal: The Propriety of the Alternative Decree*

Defendants contend on appeal that the alternative decree the court issued on September 19, 2008, should be set aside "because [defendants] have not yet had the opportunity to defend themselves against [Go's] claim for Involuntary Dissolution of [PHS]," and that "Go has not proven that she is entitled to relief under that claim." Defendants argue, as they did in the trial court, that "once there has been a determination on the merits that [Go] is entitled to commence the dissolution of [PHS], the entry of a decree with the effect of the Alternative Decree would be appropriate. . . . However, now is not the time for such an order, as the interests of equity and the desire for a determination on the merits justify a delay in the imposition of that relief." They request that we set aside the alternative decree and "remand this matter with directions to the Trial Court to only enter such a decree after [Go] has prevailed on [her] claims for involuntary dissolution."

---

*See footnote, *ante*, page 522.

We conclude that defendants misapprehend the plain meaning and effect of section 2000 which, once invoked, mandates the entry of an alternative decree such as the one entered by the trial court here. The procedure permitted by section 2000, which is entirely optional, embodies a summary proceeding which supplants the action for involuntary dissolution pursuant to section 1800.

*The Plain Meaning of Section 2000*

■ " 'A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] In construing a statute, our first task is to look to the language of the statute itself. [Citation.] When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms. [Citations.]' (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387–388 [20 Cal.Rptr.2d 523, 853 P.2d 978].)" (*Smith v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th ·117, 123 [116 Cal.Rptr.2d 728].)

■ Section 2000, subdivision (b), provides that after the purchasing parties have elected to purchase the shares owned by the moving parties (among other conditions), upon application of the purchasing parties in the pending action for dissolution, the court shall stay the winding up and dissolution proceeding and shall determine the fair value of the shares owned by the moving parties. Pursuant to section 2000, subdivision (c) after the court has confirmed the fair value of the shares, "[t]he court *shall enter a decree which shall provide in the alternative for winding up and dissolution of the corporation unless payment is made for the shares within the time specified by the decree. If the purchasing parties do not make payment for the shares within the time specified, judgment shall be entered against them* and the surety or sureties on the bond for the amount of the expenses (including attorneys' fees) of the moving parties. Any shareholder aggrieved by the action of the court may appeal therefrom." (Italics added.) Section 2000, subdivision (d), continues: "*If the purchasing parties desire to prevent the winding up and dissolution, they shall pay to the moving parties the value of their shares ascertained and decreed within the time specified pursuant to this section,* or, in case of an appeal, as fixed on appeal. On receiving such payment or the tender thereof, the moving parties shall transfer their shares to the purchasing parties." (Italics added.)

■ The language of section 2000 is clear: after the court has confirmed the fair value of the corporation's shares, the court "*shall* enter a decree which *shall* provide in the alternative for winding up and dissolution of the corporation unless payment is made for the shares within the time specified

by the decree." (§ 2000, subd. (c).) Defendants in essence ask us to engraft onto the statute a provision that the court's decree shall provide in the alternative for the winding up and dissolution of the corporation *if the moving party then prevails in the action for involuntary dissolution pursuant to section 1800*, unless payment is made for the shares within the time specified by the decree. Of course we cannot do so.

■ Defendants state that "[u]nder the [trial court's] reading of [section 2000, subdivision (c)], [Go] was then entirely excused from having to prove the merits of her Involuntary Dissolution claim before she received the benefits of the Alternative Decree." But that is precisely the concession defendants chose when they elected to proceed under section 2000. In such a proceeding, purchasing parties aspire to buy out the moving party, with minimal expenditure of time and money that would otherwise be spent in litigation, in order to preserve the corporation. If they (or the corporation) cannot pay the purchase price, or decide not to do so, then both sides must walk away, receiving pro rata the proceeds resulting from dissolution of the corporation. On the other hand, if the purchasing parties tender the amount determined by the court, the moving party cannot reject the share price as being too low. (§ 2000, subd. (d) ["On receiving such payment or the tender thereof, the moving parties shall transfer their shares to the purchasing parties."].) "The objective of section 2000 is to provide an alternative to dissolution through a buy-out by the [purchasing parties]. The objective of the statutory appraisal process is to find a fair value for the shares of the parties seeking dissolution and to award the [moving parties] seeking dissolution the liquidation value they would have received had their dissolution action been allowed to proceed to a successful conclusion. If the purchasing parties believe the price fixed by the court is too high, they can refuse to purchase the shares at that price and permit the winding up and dissolution of the corporation to proceed. Their only liability would be to pay the expenses (including attorney fees) incurred by the moving parties in the appraisal process. (See § 2000, subd. (c); [citation].) No comparable provision allows moving parties to refuse to accept a share price they believe to be too low." (*Trahan v. Trahan* (2002) 99 Cal.App.4th 62, 75 [120 Cal.Rptr.2d 814].)

Defendants contend that "the claim under [section 1800] triggered the use of [section 2000] even before there was a determination of liability on that claim, or for that matter, before there was even an opportunity for [defendants] to present evidence on the claim." However, we stress that Go's filing of her complaint for involuntary dissolution did not "trigger" defendants' use of section 2000. Defendants were not required to invoke the procedures prescribed by section 2000; they *elected* to do so. They could have chosen to litigate their cross-complaint and defend the section 1800 action for involuntary dissolution on its merits. They chose instead to use the summary

procedure afforded by section 2000, which resulted in a stay of the dissolution proceedings, valuation of the corporation, and an alternative decree to either pay Go the designated amount or have judgment of dissolution entered against them. If this were not the inevitable outcome, then all majority shareholders facing an action for involuntary dissolution would invoke section 2000 if only for the purpose of delay, with nothing to lose other than the expense of the appraisal and attorney fees, knowing they could eventually litigate the action for involuntary dissolution on its merits. The plain language of section 2000, and the apparent legislative purpose inherent in the language of the statute, do not permit such an interpretation.

■ The statutory buyout procedure set out in section 2000 has been aptly described as a "special proceeding" rather than a civil "action." (See *Veyna v. Orange County Nursery, Inc.* (2009) 170 Cal.App.4th 146, 154 [87 Cal.Rptr.3d 658].) Indeed, an action for dissolution of a corporation is itself a special proceeding. (*Esparza v. Kadam, Inc.* (1960) 182 Cal.App.2d 802, 807 [6 Cal.Rptr. 450].) " 'Special proceedings being of statutory origin . . . do not proceed according to the course of the common law . . . but give new rights and afford new remedies. [Citation.]' " (*Ibid.*) ■ We conclude that the trial court here followed the statutory procedure mandated by section 2000, affording to both the moving party and the purchasing parties the remedy to which they were entitled under that statute in the form of the alternative decree.

*Waiver*

■ We note that defendants argue at length that the alternative decree was also improper because Go waived notice of ruling, and expressly waived the entry of an interlocutory order such as the alternative decree. The trial court found that entry of such an order could not be waived by Go, just as she could not waive final judgment. Suffice it to say that we agree with the trial court that after it had determined the value of the corporation, section 2000 mandated entry of the alternative decree and Go could not "waive" its entry.

*Offset*

■ Finally, defendants argue that they should have been given the opportunity to establish that they had already paid Go $20,000, or perhaps more, for her shares, and that this amount should have been directly offset from the $155,484 the trial court ordered defendants to pay Go in the alternative decree. However, the only issue to be determined by the court in the section 2000 proceedings was the valuation of the corporation. Whether defendants acted appropriately in removing Go from the board of directors

and unilaterally setting a price and paying her for her shares, and whether defendants were entitled to any offset for sums paid to Go, were matters that would have been determined in the section 1800 action for dissolution had defendants not elected to invoke section 2000. Having done so, the only issue before the court was the valuation of the corporation. As the trial court correctly observed: "Defendants contend that they have the right to prove that Vilma Go has already been paid at least $20,000 for her shares and they should be entitled to prove the actual amount paid. Defendants misunderstand the nature of the decree, which will merely state the amount that Defendants must pay for Vilma Go's shares. Whether Defendants have partially complied, or will comply, by paying the amount specified is not an issue for the court to address in the decree." Properly understood, the court's order recognized, as required by section 2000, that defendants were directed to pay Go the stated amount, without any setoff. Defendants are not obliged to pay Go for her shares but, if they do, they must do so in the amount stated in the alternative decree. Were they to deduct from the payment tendered the claimed offset, they would not be in compliance with the first alternative stated in the decree, and the second alternative, the winding up and dissolution of the corporation, would appropriately ensue.

Defendants do not argue on appeal that the valuation amount was incorrect because it failed to take into account the purported $20,000 payment. (Cf. *Cotton v. Expo Power Systems, Inc.* (2009) 170 Cal.App.4th 1371 [89 Cal.Rptr.3d 112].) They argue only that the trial court's alternative decree was improper because it prevented defendants from litigating their entitlement to an offset, because the decree merely set the value of the corporation and required payment to Go of a specified amount by a date certain, or else winding up and dissolution of the corporation would commence. Because we conclude that the alternative decree was entirely in keeping with the requirements of section 2000, we decline to remand the matter for further consideration of possible offsets.

In addition, defendants have not demonstrated on appeal that any such payments were not already taken into account in Deakin's report, on which the court relied in determining the proper valuation of PHS. Deakin apparently did not directly offset the $20,000 payment, as did Freeman, but he did review the corporation's balance sheet, ledger, check register, and checking account statements and related documents, which would have included evidence of any payments made by PHS to Go, or by PHS to Sylvia and Husen to be used to pay Go.

## DISPOSITION

The order of September 19, 2008, is affirmed. The parties are to bear their own costs on appeal.

Manella, J., and Suzukawa, J., concurred.