Filed 12/2/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BRUCE J. GUTTMAN, | B307048 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC723226) |
| v. | |
| PHILLIP GUTTMAN et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Richard J. Burdge, Jr., Judge. Appeal dismissed.
ORIGINAL PROCEEDINGS in mandate. Petition denied.

_____

Harrison Law and Mediation and Susan L. Harrison for Plaintiff and Appellant.
Thompson Coburn and Mitchell B. Stein for Defendants and Respondents.

_____

Bruce J. Guttman (Bruce), Phillip Guttman (Phillip), and Judith Douglas (Judith) are siblings and co-equal general partners of the Guttman Family Limited Partnership (the partnership), which owns certain real estate in Los Angeles County.[1] Bruce sued to dissolve the partnership. In response, Phillip and Judith initiated a statutory procedure to buy out Bruce's interest in the partnership. Pursuant to this procedure, court-appointed appraisers submitted to the court their valuations of the partnership's properties. Bruce, believing the appraisals undervalued the properties, dismissed his complaint without prejudice. The court then granted Phillip and Judith's motion to vacate the dismissal. Bruce appealed.

We treat the appeal, which is from a nonappealable order, as a petition for writ of mandate. Because the court did not err in granting the motion to vacate Bruce's dismissal of his complaint, we deny the petition.

## FACTUAL AND PROCEDURAL SUMMARY

On September 25, 2018, Bruce filed a verified complaint against Phillip and Judith alleging causes of action for breach of fiduciary duty, waste, and dissolution of the partnership.[2] In the dissolution cause of action, Bruce alleged that Phillip and Judith refused to allow Bruce to act as a general partner,

---

[1] Because of common surnames among some of the parties, we will refer to individuals by their first names for the sake of clarity and readability. We intend no disrespect.

[2] The cause of action for breach of fiduciary duty is asserted by Bruce individually and derivatively on behalf of the partnership. The waste cause of action is asserted by Bruce derivatively on behalf of the partnership.

breached fiduciary duties owed to him, committed waste on the partnership's real property, and spent excessive amounts of partnership funds on projects and services that damaged the partnership. He further alleged that, as a result, "it is not reasonably practicable to continue to carry on the affairs of the [p]artnership." Bruce sought an order that the partnership be dissolved and its affairs wound up pursuant to Corporations Code section 15908.02, subdivision (a).[3]

On November 2, 2018, Phillip and Judith filed a verified answer to the complaint.

On February 11, 2019, Phillip and Judith filed a motion invoking a statutory limited partnership buyout procedure under section 15908.02, subdivision (b) (the buyout motion). They stated that they agreed with Bruce that "it is not reasonably practicable to carry on the activities of the [p]artnership in conformity with the [p]artnership agreement" and that they have "elect[ed] to purchase the [p]artnership interest owned by [Bruce]."

On August 16, 2019, the court issued its order on the buyout motion. The order recites that Bruce seeks dissolution of the partnership and Phillip and Judith "agree that it is not reasonably practicable to carry on the activities of the [p]artnership in conformity with the [p]artnership agreement." The order provides that the "dissolution action shall be stayed . . . so long as [Phillip and Judith] keep in full force and effect, a bond in the amount of [$125,000]." The court identified three appraisers to appraise the fair market value

---

[3] Subsequent references to section 15908.02 are to that section of the Corporations Code.

of the partnership properties as of September 25, 2018—the date Bruce commenced the dissolution action.  The court further established protocols regarding the appraisals, set a deadline of November 29, 2019 for the submission of the appraisals to the court, established a timetable for briefs, and set a hearing to be held on December 27, 2019 "for confirmation of an award and entry of a decree that shall provide in the alternative for winding up and dissolution of the [p]artnership unless payment is made for [Bruce's] [p]artnership interest within ninety (90) calendar days from entry of the decree."  The cost of the appraisals "shall be borne by the [p]artnership."

On November 29, 2019, the parties lodged the appraisals with the court.[4]  One appraiser concluded that the value of the partnership properties was $37,180,000; a second appraiser established the value at $38,300,000; and the third at $39,037,000.

In an ex parte application filed on December 23, 2019, Phillip and Judith took the position that section 15908.02 and the court's August 16, 2019 order require at least two of the appraisers reach a consensus as to the valuation.[5]  Because no such consensus had been reached, they argued that the appraisers' work "is not done," and the appraisers should

_____

[4] According to counsel for Phillip and Judith, the cost of the appraisals was $110,000.

[5] Phillip and Judith relied on the following language in the court's August 16, 2019 order:  "The award of the [a]ppraisers or a majority of them, as and when confirmed by the court, shall be final and conclusive upon all parties."  The language is substantially similar to language in section 15908.02, subdivision (d).

determine if the required consensus can be reached. Bruce disagreed, and argued that a consensus among the appraisers is not required and that "it is the *Court* which is to 'ascertain and fix the fair market value of [Bruce's] partnership interest,'" not the appraisers.

In response to the ex parte application, the court vacated the December 27, 2019 hearing date and set a status conference and case management conference for January 15, 2020.

At the January 15, 2020 conference, the court indicated that it agreed with Bruce that the buyout procedure did not require a consensus among the appraisers, or among two of them, and that the court "can come up with numbers that are different from what the appraisers themselves came up with." The court explained, however, that it may also conduct "some additional fact finding," which could include "asking the appraisers if they could reach a consensus." The court then, over Bruce's objection, directed Phillip and Judith's counsel to ascertain whether the appraisers were willing to meet in order to reach a consensus valuation and to report their response to the court. The court set a further hearing "to potentially confirm the award" for March 18, 2020. "If a consensus or majority cannot be reached by the appraisers, then the hearing will proceed with evidence by briefing."

During the status conference, Bruce's counsel referred to what she described as "flaws" in the "lowball appraisals," and asserted that the valuations of approximately $38 million "should be closer to $58 million."

The next day, Bruce filed a request for dismissal of the entire action without prejudice. The court clerk entered the dismissal on January 22, 2020.

On January 28, 2020, Phillip and Judith filed an ex parte application to vacate the dismissal. The court set a hearing on the matter to be held on February 18, 2020. Bruce filed a written opposition and Phillip and Judith filed a reply.

After a hearing, the court granted the motion to vacate the dismissal and "reinstated" its August 16, 2019 order, stating that the dismissal "was improperly entered." The court reasoned, in part, that allowing a plaintiff who has received "the valuations given by the agreed upon appraisers . . . to dismiss the action and 'start over' because he is unhappy with the valuations received seems terribly inefficient and a waste of resources of the parties and the court. In addition, for the statutory procedure to be effective according to its terms, there should not be a procedure available for one party to unilaterally 'overrule' the appraisers' valuations."

Plaintiff filed a notice of appeal on June 7, 2020.

## DISCUSSION

### A.   *Appealability*

Although Phillip and Judith have not challenged the ability of Bruce to appeal from the order granting their motion to vacate the entry of dismissal, we must consider the issue when, as here, "a doubt exists as to whether the trial court has entered a[n] . . . order or judgment made appealable by Code of Civil Procedure section 904.1." (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126; see *Estate of Sapp* (2019) 36 Cal.App.5th 86, 98 ["[b]ecause appealability goes to the question of this court's jurisdiction, we must address that threshold question before addressing the merits of [the] appeal"].)

6

The " 'right to appeal is strictly statutory, and a judgment or order is not appealable unless made so by statute.' " (*Warwick California Corp. v. Applied Underwriters, Inc.* (2020) 44 Cal.App.5th 67, 72.)  In addressing appealability in his opening brief, Bruce does not refer us to any statute authorizing the appeal, and we have found none.  Instead, Bruce relies on *Basinger v. Rogers & Wells* (1990) 220 Cal.App.3d 16 (*Basinger*).  The *Basinger* court, citing a section of Witkin's treatise on California Procedure, stated, without analysis, that an "order vacating . . . previously filed dismissals is appealable."  (*Id.* at p. 21, citing 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 108, p. 127.)

In *H. D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357 (*H. D. Arnaiz*), the Court of Appeal disagreed with *Basinger* and criticized its reliance on Witkin for the general principle that "a vacating order is generally appealable," because "[t]he very next paragraph in Witkin . . . qualifies the general rule of appealability" by stating that " '[a] vacating order is not appealable unless it vacates a prior appealable judgment.  [Citation.]' " (*Id.* at p. 1365, quoting 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 149, p. 215; accord, 9 Witkin, Cal. Procedure (5th ed. 2020) Appeal, § 195.)  The court in *H. D. Arnaiz* further stated that the *Basinger* court "ignores the requirement of a statutory basis for finding an order appealable and the requirement that a vacating order is appealable only if it vacates an appealable judgment."  (*H. D. Arnaiz, supra,* 96 Cal.App.4th at p. 1366; see also *Mesa Shopping Center-East, LLC v. O Hill* (2014) 232 Cal.App.4th 890, 898 [agreeing "that an order *granting* a motion to vacate a voluntary dismissal is not appealable as such"].)  We agree with *H. D. Arnaiz* and

7

decline to follow *Basinger* on this point and, finding no statutory authority for an appeal from an order vacating a voluntary dismissal, conclude that the order is not appealable.

We requested that the parties brief the question whether, if the challenged order is not appealable, we should treat the purported appeal as a petition for writ of mandate. In responding to the request, both sides urge us to do so.

Discretionary writ review of an appeal from a nonappealable order may be appropriate "when (1) requiring the parties to wait for a final judgment might lead to unnecessary trial proceedings; (2) the briefs and record included, in substance, the necessary elements for a proceeding for a writ of mandate; (3) there was no indication the trial court would appear as a party in a writ proceeding; (4) the appealability of the order was not clear; and (5) the parties urged the court to decide the issues rather than dismiss the appeal." (*Hall v. Superior Court* (2016) 3 Cal.App.5th 792, 807, citing *Olson v. Cory* (1983) 35 Cal.3d 390, 400−401.)

These elements are present here: (1) If Bruce is correct on the merits of his challenge to the order vacating his dismissal, further proceedings in the case would be unnecessary and a waste of resources by the parties and the courts; (2) the briefs and the record on appeal satisfy the requirements for writ review; (3) there is no indication that the trial court would appear as a party in a writ proceeding; (4) as shown by the discussion above concerning the *Basinger* and *H. D. Arnaiz* decisions, the appealability of the challenged order was not clear; and (5) all parties urge us to decide the merits of the issue. We will therefore treat the appeal as a petition for writ of mandate. (See *H. D. Arnaiz, supra*, 96 Cal.App.4th at p. 1367

[treating appeal from order granting motion to vacate dismissal as petition for writ of mandate].)

### B.   *Standard of Review*

This case involves the interpretation of statutes and their application to undisputed facts.  We review these issues de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *Gogri v. Jack in the Box Inc.* (2008) 166 Cal.App.4th 255, 262.)

### C.   *Analysis*

#### 1.   *Limited partnership dissolution and the statutory buyout procedure*

Bruce sought dissolution of the partnership under subdivision (a) of section 15908.02, which provides that a partner in a limited partnership may apply to a court for an order dissolving the partnership "if it is not reasonably practicable to carry on the activities of the limited partnership in conformity with the partnership agreement."  (§ 15908.02, subd. (a).)

Phillip and Judith filed their buyout motion pursuant to subdivision (b) of section 15908.02.  This subdivision provides that, in a "suit for judicial dissolution" of a limited partnership, "the other partners may avoid the dissolution of the limited partnership by purchasing for cash the partnership interests owned by the partners so initiating the proceeding . . . at their fair market value."  (*Ibid.*)  The partners who commence the dissolution proceeding are described in the statute as the "moving parties" (*ibid.*); the "other partners" who initiate the buyout procedure are referred to as the "purchasing parties." (*Id.*, subds. (b) & (c).)

The purchasing parties, who "elect to purchase the partnership interests owned by the moving parties," may initiate the buyout procedure by "application" "either in the pending action" or by commencing a separate proceeding in the superior court. (§ 15908.02, subd. (c).) If the court grants the application, it must "stay the winding up and dissolution proceeding and shall proceed to ascertain and fix the fair market value of the partnership interests owned by the moving parties." (*Ibid.*) The court shall appoint appraisers to appraise the fair market value of the moving parties' partnership interests and order "the time and manner for producing evidence, if evidence is required." (*Id.*, subd. (d).)

Subdivision (d) of section 15908.02 provides that "[t]he award of the appraisers or a majority of them, when confirmed by the court, shall be final and conclusive upon all parties." Although it does not appear that a court has interpreted this language in section 15908.02, courts have held that the same language in analogous statutes regarding the buyout of interests in limited liability companies and corporations does not limit the court's ability to select among the various appraisals or independently determine the value of the parties' interests. (See, e.g., *Cheng v. Coastal L.B. Associates, LLC* (2021) 69 Cal.App.5th 112, 119 [construing identical language in Corporations Code section 17707.03 concerning the buyout of interests in limited liability corporations, the "appraisers' award does not bind the trial court" and the "court may select among conflicting appraiser opinions or decide the matter de novo"]; *Goles v. Sawhney* (2016) 5 Cal.App.5th 1014, 1021 (*Goles*) [notwithstanding identical language in Corporations Code section 2000, concerning buyout of corporate shareholder

10

interests, court could "make a de novo determination of the fair value of [a party's] shareholder interest"].)

Ultimately, the "court shall enter a decree that shall provide in the alternative for winding up and dissolution of the limited partnership unless payment is made for the partnership interests within the time specified by the decree." (§ 15908.02, subd. (d).)  If the purchasing parties pay to the moving parties the judicially determined value of the moving parties' partnership interests, "the moving parties shall transfer their partnership interests to the purchasing parties." (*Id.*, subd. (e).)  If the purchasing parties do not make timely payment for the partnership interests, the partnership shall be dissolved and wound up, and judgment entered against the purchasing parties "for the amount of the expenses, including attorneys' fees, of the moving parties."  (*Id.*, subd. (d); cf. *Ontiveros v. Constable* (2018) 27 Cal.App.5th 259, 277 (*Ontiveros*).)

Courts have held that a buyout proceeding depends upon the existence of a dissolution proceeding and, where a dissolution proceeding is dismissed prior to the granting of a motion to commence the buyout proceeding, the buyout proceeding cannot go forward.  (See *Panakosta Partners, LP v. Hammer Lane Management, LLC* (2011) 199 Cal.App.4th 612, 630 (*Panakosta*); cf. *Ontiveros, supra*, 27 Cal.App.5th at p. 271; *Kennedy v. Kennedy* (2015) 235 Cal.App.4th 1474, 1483 (*Kennedy*).)  When, however, the court grants a buyout motion, the buyout procedure " 'supplants' the action for involuntary dissolution."  (*Ontiveros, supra*, 27 Cal.App.5th at pp. 275–276, quoting *Go v. Pacific Health Services, Inc.* (2009) 179 Cal.App.4th 522, 530 (*Go*); accord, *Schrage v. Schrage* (2021)

11

69 Cal.App.5th 126, 137, petn. for review pending, petn. filed Nov. 1, 2021, S271548.); *Goles*, *supra*, 5 Cal.App.5th at p. 1018.)[6]

In *Ontiveros*, the court explained that the word "supplants" is "particularly apt" in this context because the buyout statute "provides a mechanism to take the place of a cause of action for involuntary dissolution by allowing the parties to avoid litigating that claim and providing a means to establish the fair value of the corporation's shares." (*Ontiveros*, *supra*, 27 Cal.App.5th at p. 276.)[7] Stated differently, once the court commences a buyout procedure, "the plaintiff no longer control[s] her cause of action" for dissolution and "the involuntary dissolution claim cease[s] to exist." (*Ontiveros*, *supra*, 27 Cal.App.5th at p. 276.)

---

[6] The corporate buyout statute discussed in *Ontiveros*—Corporations Code section 2000—is substantially similar for our purposes to section 15908.02 (*Ontiveros*, *supra*, 27 Cal.App.5th at p. 269, fn. 8; see also *Kennedy, supra,* 235 Cal.App.4th at p. 1482), and the *Ontiveros* court's discussion applies with equal force in the instant case.

[7] Bruce asserts that *Ontiveros* is inapposite because the plaintiff's dismissal of the complaint in that case was attempted under Code of Civil Procedure section 581, subdivision (e), which, unlike dismissals under subdivision (b), does not apply to special proceedings such as corporate and partnership dissolutions. *Ontiveros*'s holding that the corporate buyout provision supplants the plaintiff's corporation dissolution action, however, is not dependent upon the subdivision of Code of Civil Procedure section 581 under which the plaintiff sought dismissal.

### 2. *No dismissal after court granted buyout motion*

Bruce sought dismissal under Code of Civil Procedure section 581, subdivision (b)(1),[8] which provides: "An action may be dismissed . . . [¶] . . . [w]ith or without prejudice, upon written request of the plaintiff to the clerk, filed with papers in the case, or by oral or written request to the court at any time before the actual commencement of trial, upon payment of the costs, if any."[9] Although a partnership dissolution proceeding is, like its corporation dissolution counterpart, a special proceeding (cf. *Esparza v. Kadam, Inc.* (1960) 182 Cal.App.2d 802, 807), an "[a]ction," for purposes of section 581, includes a "special proceeding." (§ 581, subd. (a)(1); see *321 Henderson Receivables Origination LLC v. Red Tomahawk* (2009) 172 Cal.App.4th 290, 301.)

---

[8] Subsequent references to section 581 are to that section of the Code of Civil Procedure.

[9] Phillip and Judith make a threshold argument based upon the phrase in section 581, subdivision (b)(1), requiring the dismissing plaintiff to make "payment of the costs, if any." They argue that Bruce's request for dismissal was improper because he has not "paid or offered to pay costs." The argument appears to assume that the word "costs" in section 581, subdivision (b)(1) refers to costs recoverable by a prevailing party under Code of Civil Procedure section 1032, subdivision (b). "[C]osts," in section 581, subdivision (b), however, refers only to the fee, if any, charged by the clerk of the court for entering the requested dismissal. (See *Hopkins v. Superior Court* (1902) 136 Cal. 552, 553; *Home Real Estate Co. v. Winnants* (1919) 39 Cal.App. 643, 645.) At the time plaintiff filed his request for dismissal, the Los Angeles Superior Court did not charge such a fee.

13

A plaintiff's right to dismiss an action under section 581 is not absolute. (*Cole v. Hammond* (2019) 37 Cal.App.5th 912, 921; *Groth Bros. Oldsmobile, Inc. v. Gallagher* (2002) 97 Cal.App.4th 60, 66 (*Groth*).) Among other limitations on that right, a plaintiff must request dismissal "before the actual commencement of trial." (§ 581, subd. (b)(1).) The commencement of trial, for purposes of section 581, is statutorily defined as "the beginning of the opening statement or argument of any party or his or her counsel, or if there is no opening statement, then at the time of the administering of the oath or affirmation to the first witness, or the introduction of any evidence." (§ 581, subd. (a)(6).)

This definition of trial is not applied easily here. Once the court granted the buyout motion, the dissolution case was "stay[ed]" (§ 15908.02, subd. (c)) or "supplant[ed]" (*Ontiveros, supra*, 27 Cal.App.5th at p. 276), and the buyout procedure was set to go forward until either Phillip and Judith bought Bruce's partnership interest or the partnership was dissolved. (§ 15908.02, subds. (d) & (e); see *Go, supra*, 179 Cal.App.4th at p. 531.) Although the court's task of determining the value of the partnership shares is arguably a trial, there is no opening statement, arguments, witnesses, or evidence submitted *with respect to the dissolution cause of action*; that is, the merits of the dissolution case are never tried because, as discussed below, in the event the purchasing parties fail to pay for the moving party's shares, the court's "self-executing" decree dissolves the partnership. (*Veyna v. Orange County Nursery, Inc.* (2009) 170 Cal.App.4th 146, 156 (*Veyna*).)

The difficulty in applying the definition of "trial" in section 581 to the stayed or supplanted dissolution action under

14

section 15908.02 does not end our analysis. In *Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781 (*Wells*), the plaintiff dismissed his complaint without prejudice after the defendant's demurrer was sustained with leave to amend and the plaintiff failed to amend. (*Id.* at p. 789.) The plaintiff argued that the dismissal was valid because the statutory definition of trial in section 581 provided the "exclusive test" regarding his right to dismiss his complaint and he retained that right "until the occurrence of one of the specific acts" described in that definition. (*Wells*, *supra*, 29 Cal.3d at p. 786.) The Supreme Court disagreed, and explained that the plaintiff's argument, if adopted, would allow the plaintiff "to reassert the same allegations in still another complaint, seeking a more favorable ruling from another court, rather than to proceed in a more appropriate, expeditious and final, course to appeal on the legal sufficiency of those allegations. [¶] The obvious consequence of such a statutory construction would be to prolong, rather than to terminate, lawsuits. It would not serve the orderly and timely disposition of civil litigation. No good reason appears why encouragement should be given to such tactics, the effect of which is to expose defendants to duplicative 'annoying and continuous litigation,' to burden our trial courts with 'fruitless' proceedings, and to delay the ultimate resolution of the validity of the plaintiff's pleading." (*Id.* at pp. 788–789.)

Since *Wells*, the definition of trial in section 581 "has been held to be illustrative rather than exclusive of the circumstances under which a trial has begun" (*Miller v. Marina Mercy Hospital* (1984) 157 Cal.App.3d 765, 768 (*Miller*); accord, *Gray v. Superior Court* (1997) 52 Cal.App.4th 165, 171 (*Gray*)), and courts will consider the policy goal of avoiding "abuse by

15

plaintiffs who, when led to suppose a decision would be adverse, would prevent such decision by dismissing without prejudice and refiling, thus subjecting the defendant and the courts to wasteful proceedings and continuous litigation" (*Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 909).  Courts have thus denied a plaintiff the right to dismiss an action without prejudice when the court issues a tentative ruling that the court will sustain the demurrer without leave to amend (*Groth, supra*, 97 Cal.App.4th at p. 70), and denied a plaintiff the right to dismiss after the court had announced its tentative ruling to grant the defendant's summary judgment motion (*Mary Morgan, Inc. v. Melzark* (1996) 49 Cal.App.4th 765, 767, 771−772).  The "common thread running through . . . these decisions," one court stated, "is the notion of fairness, which in turn depends on the plaintiff's motivation and intent in dismissing his complaint." (*Tire Distributors, Inc. v. Cobrae* (2005) 132 Cal.App.4th 538, 546.)

Courts have also denied the plaintiff the right to dismiss an action without prejudice when dismissal "would frustrate a statutory scheme." (*Gray*, *supra*, 52 Cal.App.4th at p. 172.) In *Herbert Hawkins Realtors, Inc. v. Milheiser* (1983) 140 Cal.App.3d 334, for example, a judicial arbitration of the plaintiffs' small claims case was favorable to the defendants. The plaintiffs requested trial de novo and, prior to trial, dismissed the case without prejudice. (*Id.* at p. 337.)  The Court of Appeal held that the dismissal was improper. Permitting the plaintiffs "to voluntarily dismiss without prejudice," the court explained, would defeat "the express legislative purpose of 'expediting and removing complexities from the judicial process relating to small civil claims.' "

16

(*Id.* at p. 339; see also *Gray, supra*, 52 Cal.App.4th at p. 173 [allowing plaintiff to dismiss partition action after referee made findings of fact would circumvent the statutory scheme regarding partition actions]; *Mary Morgan, Inc. v. Melzark, supra*, 49 Cal.App.4th at pp. 771−772 [allowing plaintiff to dismiss after hearing on summary judgment motion began would "eviscerate the summary judgment procedure"]; *Hartbrodt v. Burke* (1996) 42 Cal.App.4th 168, 175 [plaintiff who failed to comply with a discovery order could not dismiss his complaint just prior to a hearing on the defendant's motion for terminating sanctions because the "tactic would simply defeat the trial court's power to enforce its discovery orders"]; *Miller, supra,* 157 Cal.App.3d at p. 769 [plaintiff failed to respond to requests for admission, which resulted in dispositive facts being deemed admitted; plaintiff's subsequent attempt to dismiss the action was denied because it would have frustrated and circumvented the statutory scheme concerning requests for admissions].)

Here, Bruce's dismissal of the dissolution cause of action would frustrate the statutory scheme under section 15908.02. Under that statute, once the buyout procedure has been ordered, the plaintiff's dissolution action is stayed—or, as *Ontiveros* stated, "supplanted" (*Ontiveros, supra*, 27 Cal.App.5th at p. 279)—and the buyout procedure goes forward in its place. If Bruce is allowed to dismiss his dissolution action and then permitted to file a new action for dissolution, he would effectively nullify the order staying the action and deny Phillip and Judith the relatively quick and efficient resolution of the issue the buyout procedure was intended to provide. Indeed, as the trial court observed, each time Bruce "is unhappy" with the

17

appraiser's valuations, he could simply dismiss his action and start over with a new complaint. The result not only frustrates the statutory scheme, but is patently unfair to Phillip and Judith and an obvious waste of judicial resources.

Although policy concerns weigh heavily in favor of denying Bruce the right to dismiss, the denial of that right cannot be based solely on policy grounds. As one court explained, "[w]hile we agree that looking to the equities is good judicial policy, we are mindful that any consideration of when the statutory right to voluntary dismissal terminates must be rationally connected to the statutory phrase 'commencement of trial.' " (*Franklin Capital Corp. v. Wilson* (2007) 148 Cal.App.4th 187, 207.) The *Franklin* court thus disagreed with a prior case "to the degree that it might be read to stand for the idea that equities *alone* can justify the termination of the statutory right." (*Ibid.*) But, as the cases cited above reveal and a concurring justice in *Franklin* observed, courts have construed the phrase, " 'commencement of trial' to encompass any procedure that is potentially dispositive, including demurrer or summary judgment tentative rulings, or a pending motion for terminating sanctions." (*Id.* at p. 221 (conc. opn. of Aronson, J.).) The phrase, " 'commencement of trial,' " another court explained, "is not restricted to only jury or court trials on the merits, but also includes *pretrial* procedures that *effectively dispose of the case.*" (*Gogri v. Jack in the Box Inc.*, *supra*, 166 Cal.App.4th at p. 262; see also *M & R Properties v. Thomson* (1992) 11 Cal.App.4th 899, 903–904 ["plaintiff's right [to dismiss] is cut off once it is established that there will be no trial"].)

Here, although the order granting the buyout motion did not address or determine the merits of the dissolution action, it did effectively dispose of the cause of action and determine that there will be no trial on the claim. As explained above, the effect of the order granting the motion can be viewed as either supplanting the cause of action, as the *Ontiveros* court described it, or staying the cause of action such that a trial on the merits of the dissolution cause of action never occurs. Even if the purchasing parties ultimately decline to purchase the moving party's interests, there is no trial of the dissolution cause of action; the "self-executing" decree (*Veyna*, *supra*, 170 Cal.App.4th at p. 156) dissolving the partnership is simply "entered against" the purchasing parties (§ 15908.02, subd. (d)). Thus, the dissolution cause of action either "cease[s] to exist" (*Ontiveros*, *supra*, 27 Cal.App.5th at p. 276) or is put into the legal equivalent of a coma from which it is never revived. In either case, the granting of the buyout motion determined that there would be no trial on the dissolution cause of action and thus effectively disposed of that cause of action. That disposition, together with the policy considerations discussed above, precludes Bruce from dismissing his cause of action for dissolution after the buyout motion has been granted.

Bruce relies on *Panakosta*, *supra*, 199 Cal.App.4th 612, and *Kennedy*, *supra*, 235 Cal.App.4th 1474, for his argument that he can dismiss his dissolution cause of action "even in the face of a buyout motion." (Boldface & capitalization omitted.) In *Panakosta*, the plaintiffs filed a complaint seeking judicial dissolution of a limited partnership and other relief. (*Panakosta*, *supra*, 199 Cal.App.4th at p. 620.) The defendants—other partners of the limited partnership—

19

filed a cross-complaint alleging various tort and contract causes of actions and, under a separate case number, filed a "special proceeding" to initiate the buyout procedure under section 15908.02 and a motion for the appointment of appraisers. (*Panakosta*, *supra*, 199 Cal.App.4th at pp. 620–621.) Before that motion was heard, the plaintiffs dismissed their dissolution cause of action with prejudice and the defendants dismissed their cross-complaint. (*Id.* at p. 621.) It does not appear that the defendants challenged in the trial court the plaintiffs' ability to dismiss their dissolution cause of action. The plaintiffs then filed an opposition to the defendants' buyout petition on the ground that there was no cause of action for dissolution pending. (*Ibid.*) The trial court agreed and denied the defendants' buyout petition and the motion for appointment of appraisers on the ground that no dissolution proceeding was pending. (*Ibid.*)

The Court of Appeal affirmed the denial of the defendants' buyout proceeding on the ground that the trial court lacked "jurisdiction to grant a buyout under section 15908.02 when no cause of action for judicial dissolution is pending." (*Panakosta*, *supra*, 199 Cal.App.4th at p. 630.) The court rejected the defendants' argument that "the right to dismiss a dissolution cause of action must be cut off when a motion for buyout is filed." (*Id.* at p. 632.) The court also rejected the defendants' "concern that the dismissal was a tactical ploy" because the plaintiffs "dismissed [their] cause of action for judicial dissolution with prejudice" and could not, therefore, "refile [their] judicial dissolution action after the denial of the buyout petition." (*Ibid.*)

*Panakosta* is distinguishable because the plaintiffs in that case dismissed their case prior to the court's ruling on the defendants' buyout motion. Here, Bruce filed his request for dismissal five months after the court commenced the buyout procedure. Moreover, the policy rationale that *Panakosta* relied on does not apply here. In contrast to the plaintiffs in that case, who dismissed their dissolution cause of action with prejudice and did not, therefore, use the dismissal as a "tactical ploy," Bruce dismissed his action without prejudice and thus would presumably have the right, as he asserts, " 'to later refile essentially the same action.' " Thus, as the trial court indicated in this case, if the dismissal was allowed to stand, Bruce could engage in the kind of gamesmanship that was unavailable to the plaintiffs in *Panakosta*. *Panakosta*, therefore, does not help Bruce.

Bruce's reliance on *Kennedy* fares no better. In that case, the court held that a plaintiff who had sued for dissolution of certain corporations and limited liability corporations could dismiss his dissolution claims after defendants had filed a buyout motion under statutes analogous to section 15908.02 but before the motion was heard or decided. (*Kennedy*, *supra*, 235 Cal.App.4th at pp. 1479−1480.) We agree with the *Ontiveros* court that the holding in *Kennedy* should be limited to that procedural situation. (See *Ontiveros*, *supra*, 27 Cal.App.5th at p. 272.) Here, by contrast, Bruce's request for dismissal was made after the court had granted the buyout motion; indeed, it was not made until the buyout process was nearing completion. We therefore reject Bruce's reliance on *Kennedy*.

Contrary to Bruce's suggestion, our conclusion does not imply that a dissolution action can never be dismissed once

a buyout procedure has commenced. As the *Ontiveros* court stated: "[W]e do not suggest that a court does not have discretion to dismiss a special proceeding under any circumstance. For example, we can imagine a scenario where the parties settle the dispute rendering the purpose of the special proceeding moot. In addition, there may be other scenarios where justice or equity would support a court ending" the buyout proceeding. (*Ontiveros*, *supra*, 27 Cal.App.5th at p. 279.) Bruce has not presented any such scenario here.

### 3. *No dismissal when defendants seek affirmative relief*

In addition to the commencement of trial limitation on a plaintiff's right to dismiss, a plaintiff may not dismiss an action when a defendant seeks affirmative relief in the case. (§ 581, subd. (i); *Conservatorship of Martha P.* (2004) 117 Cal.App.4th 857, 869–870; *Gray*, *supra,* 52 Cal.App.4th at p. 174.) Affirmative relief is "new matter that in effect amounts to a counterattack. The relief sought, if granted, operates not as a defense but affirmatively and positively to defeat the plaintiff's cause of action." (*Schwartz v. Schwartz* (2008) 167 Cal.App.4th 733, 742–743; see *Aetna Casualty & Surety Co. v. Humboldt Loaders, Inc.* (1988) 202 Cal.App.3d 921, 928 [same].) "The phrase 'new matter' refers to something relied on by a defendant [that] is not put in issue by the plaintiff." (*State Farm Mut. Auto. Ins. Co. v. Superior Court* (1991) 228 Cal.App.3d 721, 725.) The purpose of the rule is "to prevent a plaintiff from dismissing an action where the defendant has on file pleadings seeking affirmative relief on which in the future the defendant would be entitled to a hearing." (*Golden Gate*

22

*Mechanical Con. Assn. v. Seaboard Surety Co.* (9th Cir. 1968) 389 F.2d 892, 894.)

Although section 581 refers to "affirmative relief . . . sought by [a] cross-complaint" (§ 581, subd. (i)), the "name of the pleading" is not determinative; "the controlling factor is whether affirmative relief is requested" (*Guardianship of Lyle* (1946) 77 Cal.App.2d 153, 155). Thus, contrary to Bruce's suggestion that a cross-complaint is a sine qua non of preventing voluntary dismissal under this rule, the rule applies when affirmative relief is sought "regardless of the form of the pleading." (*Conservatorship of Martha P.*, *supra*, 117 Cal.App.4th at p. 869; see also *Gray*, *supra*, 52 Cal.App.4th at p. 174; *In re Marriage of Tamraz* (1994) 24 Cal.App.4th 1740, 1747.)

Phillip and Judith contend that they sought affirmative relief through the court-approved buyout procedure and that Bruce was thereby prevented from voluntarily dismissing his complaint. We agree.

In their buyout motion, Phillip and Judith introduced new matter by way of their election to purchase Bruce's partnership interest. The buyout procedure they sought to invoke was not an affirmative defense, but a counterattack that positively sought to defeat the plaintiff's cause of action.

Because Phillip and Judith were pursuing the affirmative relief available under the buyout provision at the time Bruce filed his request to dismiss the action, the entry of dismissal was improper and the court did not err in vacating the dismissal.

23

## DISPOSITION

The appeal from the order dated February 18, 2020 granting the motion to vacate dismissal is dismissed.  Deeming the appeal as a petition for writ of mandate, the petition is denied.

Phillip Guttman and Judith Douglas are awarded their costs in this proceeding.

<u>CERTIFIED FOR PUBLICATION</u>.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

BENDIX, J.